188 P.2d 329

**DAVIDSON v. DAVIDSON.**

No. 7368.

Supreme Court of Idaho.

Dec. 30, 1947.

A. H. Nielson, of Burley, and H. A. Baker, of Rupert, for respondent.

S. T. Lowe and Kales E. Lowe, both of Burley, for appellant.

BUDGE, Chief Justice.

This is an action sounding in tort in that it is alleged in the complaint that during

the years 1943, 1944 and 1945 defendant-respondent, without the knowledge and consent of plaintiff-appellant, sold thirty-two head of cattle, alleged to have been owned by appellant, of the reasonable value of $100 per head, appropriated the money received for said cattle, and refused to pay appellant the money representing the value thereof.

After a careful study of the entire record and the briefs of respective counsel, in order that a clearer understanding of the facts appear, we have concluded to incorporate rather fully a statement of the pertinent facts.

It appears that William A. Davidson, deceased since 1937, and Mary Etta Davidson, his wife, resided on a ranch near Oakley, in Cassia County; that appellant, Edward E. Davidson, is the youngest and respondent, William A. Davidson, is the eldest of their several children. In 1921 respondent purchased the ranch upon which his parents and their family resided. The mother was still living on the place at the time of the trial. In 1925, when appellant was twelve or thirteen years old, he worked for a neighbor and earned $10 with which he purchased a heifer calf, which was later named Daisy. It is appellant's contention that the entire herd of cattle involved in this action was the increase, direct or remote, of this heifer calf which was brought to respondent's farm and fed from the products thereof. In 1931 and 1932 Daisy, then a cow of mature years, together with other livestock on the place including the livestock of respondent, was mortgaged by the parents. The mortgage was renewed from time to time, but was not paid. Subsequently, and during the year 1934, after appellant had attained his majority, the mortgage was foreclosed, but no record of the foreclosure proceedings can be found. The cattle covered by the mortgage were scattered, some on the range, and respondent was employed by the agent of the mortgagee to gather up the cattle in order that they might be sold at the foreclosure sale. Prior to gathering the cattle respondent had an agreement with the agent of the mortgagee that he could have either money or cattle as compensation for his services. The cow Daisy, together with other cattle covered by the mortgage, except two calves hereinafter referred to, were at the place of sale.

Much of the testimony is vague and lacks certainty. Whether respondent purchased the cow Daisy from the agent of the mortgagee at, or prior to, the sale is not made definitely certain by the testimony offered. However, we think it is clearly established that respondent purchased said cow in satisfaction of his claim for services rendered to the mortgagee and, at the same time, he was given a lump-jawed cow called Blockhead. The foreclosure sale was had and the cow Daisy was acquired by respondent and taken into his possession in July or August, 1934, twelve years prior to the filing of the present action March 30, 1946.

It further appears that a month prior to the foreclosure sale a calf called Sunshine from Daisy, and a calf called Brindle from another mortgaged cow, were at a neighbor's place and were not sold at the foreclosure sale. Respondent took possession of the two cows and the two calves, above mentioned, immediately following the sale. These cattle were kept on respondent's farm, fed from the products, branded with respondent's brand, in which work appellant assisted, were ranged on forest reserve acquired by respondent, who thereafter peaceably, openly, notoriously, and under claim of right claimed title to said cattle. He sold such of the livestock as he chose to sell from time to time, appellant making no complaint.

Some seventeen years before the trial, and before any of the cows were mortgaged, a milk account was opened with the Jerome Cooperative Creamery. C. W. Ross, manager of the creamery, testified the original transaction was with William A. Davidson, father of appellant and respondent; that milk was purchased and checks issued therefor in the name of appellant, and the account was never changed on the company's books. There is evidence that the milk checks were used by Mrs. Davidson in maintaining the home; that she "was allowed to use the milk checks for grocery bills." Respondent did not change the arrangement or method adopted by his father, but continued to permit the checks to be issued in appellant's name. There is no evidence that any of the checks went into the hands of appellant, or that he knew he was named as payee.

Following the death of the father in 1937 respondent, until about 1945, acted as head of the family. It appears there had accumulated on the farm a small herd of cattle claimed by respondent since 1934. In 1944 respondent sold two steers to Merrill Warr for $235.12; the check in payment therefor was made payable to appellant, and respondent endorsed and cashed it. Respondent testified the check was so made because of some difficulty he had with another brother, Perry, who threatened to expose respondent as an income tax violator. Perry, a witness for appellant, while he contradicted certain parts of respondent's testimony, did not deny that the check was issued in favor of appellant as a result of the threats he had made, or that he had made the threats.

Upon appellant's return from the service March 1, 1946, he claimed the cattle over which respondent had exercised exclusive control for a period of eight years, after deducting the four year period appellant served in the armed forces, and Perry not only claimed but actually sold hogs upon the place, and wanted to share in the cattle, whereupon respondent proceeded to sell all the cattle claimed by him [respondent]. There is evidence in the record tending to show that all members of the family had come to regard the cattle as a family herd.

The cause was tried by the court sitting with a jury, resulting in a verdict in favor of respondent, from which judgment this appeal is prosecuted.

At this point it might be well to refer to the complaint and amended answer for the purpose of determining the issues presented by the pleadings.

Appellant alleges in his complaint that he owned the cattle involved herein, which were reasonably worth $100.00 per head; that respondent sold said cattle during the years 1943, 1944 and 1945 without the knowledge or consent of appellant, retained and appropriated the money received therefor to his own use, and that there is due and owing to him $3,200.00, together with interest. Respondent, in his amended answer, specifically denies each and all the allegations of the complaint, and by way of an affirmative defense alleges:

"That the cause of action set forth in plaintiff's complaint is, and was at the time of the commencement of said action, barred by the provisions of subdivision 3 of Section 5-218 of the Idaho Code Annotated." and prays that plaintiff take nothing by his action; that the same be dismissed, and that he have his costs and disbursements of suit.

Appellant ably and strenuously contends that the defense of the statute of limitations is not applicable for the reason that appellant waived the tort and sued on implied contract for the value of the cattle, and cites in support of his contention the

case of Davidson Grocery Co. v. Johnston, 24 Idaho 336, 133 P. 929, Ann.Cas.1915C, 1129.

That the owner of property converted may waive the tort and sue on implied contract is generally recognized. In Davidson Grocery Co. v. Johnston, supra, plaintiff pleaded a sale and delivery of merchandise at the special instance and request of defendant, and sought recovery on implied contract for its reasonable value. Such is not the situation here, neither are the pleadings comparable. Here appellant pleaded ownership of all the cattle and specifically alleged wrongful sale and appropriation of the proceeds by respondent. Appellant's complaint and the nature of the cause of action is not on contract, but stated an action to recover for tortious act or conversion. School District No. 18 v. Twin Falls B. & T. Co., 52 Idaho 200, 12 P. 2d 774.

Appellant sets forth eight assignments of error, the first six of which are predicated upon alleged erroneous instructions given by the court; the seventh upon the action of the court in refusing to give appellant's requested instruction No. 5, and the eighth upon the ground that the verdict was contrary to the evidence in numerous particulars.

If we have analyzed this case correctly, there is but one question necessary to be discussed or decided: Was appellant's action barred by the provisions of sec. 5-218, subd. 3, I.C.A., which reads as follows:

"Within three years: * * *

"3. An action for taking, detaining or injuring any goods or chattels, including actions for the specific recovery of personal property."

It will be remembered that both appellant and respondent claim ownership in and to all the cattle here involved [including three head bought by respondent from Forrest J. Severe]. The allegation in appellant's complaint is, that until the sale he was the owner of the cattle. The allegation was denied by the amended answer, and thus the issue of ownership was set up. In other words, there are but four issues framed by the pleadings, namely: 1. Plaintiff's ownership; 2. value; 3. wrongful sale, and, 4. by the affirmative defense, the statute of limitations.

The statute of limitations, sec. 5-218, subd. 3, supra, as to form and substance, is correctly pleaded, and raises the decisive question in this case. If the statute of limitations bars the action, other questions raised, assigned and argued become immaterial.

 That respondent acquired the cow Daisy and took her into his possession, under a claim of ownership, at the foreclosure sale in 1934 is unquestionably established by the record, and under proper instruction was so found by the verdict of the jury. Conceding that appellant was the owner of said cow at and prior to the sale, it was at that time, if at all, respondent was guilty of conversion of appellant's property, and a cause of action at once accrued against him. All the cases are agreed in this, that a right of action accrues in favor of the owner of goods as soon as they are wrongfully taken from his possession, or wrongfully converted. Havird v. Lung, 19 Idaho 790, 115 P. 930; School District No. 18 v. Twin Falls B. & T. Co., 52 Idaho 200, 12 P.2d 774; Lowe v. Ozmun, 137 Cal. 257, 70 P. 87; Rose v. Dunk-Harbison Co., 7 Cal.App. 2d 502, 46 P.2d 242; 65 C.J. p. 72, sec. 118; 34 Am.Jur. p. 108, sec. 134. The rule seems to be that it is a wrongful taking that gives a right of action, and it is a wrongful holding for the required length of time, if openly and exclusively, that sets and keeps the statute in operation, and results in transferring title from the true owner to the tortious holder.

"* * * the weight of authority is in favor of the proposition that where one has had the peaceable, undisturbed, open possession of personal property, with an assertion of his ownership, for the period which, under the law, would bar an action for its recovery by the real owner, the former has acquired a good title—that is, a title superior to that of the latter, whose neglect to avail himself of his legal rights has lost him his title. * * * It has been held that the fact that the origin of such possession may have been fraudulent does not prevent the possessor from acquiring title. * * *" 1 Am.Jur. sec. 96, pp. 845, 846.

That respondent peaceably, openly and exclusively exercised control and dominion

over the cow Daisy, her increase, and the increase of the increase, for a period exceeding the statute of limitations is clearly established by the record. Referring back to the two calves that were taken to the Pascott place prior to the foreclosure sale, both of these calves were the increase of the mortgaged livestock. Respondent stated that "at least one and possibly both of these calves were increase of the cow Daisy." Respondent immediately after the foreclosure sale took possession of, and exercised exclusive control over the two calves. 1 Am.Jur. sec. 96, p. 846. Consequently, it would follow that although respondent's acquisition of the two calves was fraudulent as against the mortgagee, the taking constituted a conversion and a cause of action then arose in favor of said mortgagee, or appellant if he was the owner of the calves. No action being brought within the statutory period, the bar of the statute is applicable.

We have examined the instructions given by the court relative to the statute of limitations and find no prejudicial error.

From what has been said it follows the judgment must be affirmed, and it is so ordered.

■ Since this is an unfortunate family controversy, and it further appearing that certain equities exist in favor of all the family, we have concluded to order that each of the parties to this action pay one-half of the costs incurred on appeal.

GIVENS, MILLER, and HYATT, JJ., concur.

HOLDEN, J., sat at the hearing but did not participate in the decision of this case.