979 P.2d 605

PEASLEY TRANSFER & STORAGE
CO., an Idaho corporation, Plaintiff–
Counterdefendant–Respondent,

v.

Victoria H. SMITH, Defendant–
Counterclaimant—Cross
Claimant–Appellant,

and

Sharon K. Smith; Ada County, a political
subdivision of the State of Idaho; The
Ada County Sheriff's Department and
its sheriff, Vaughn Killeen, Defendants–
Cross Defendants–Respondents,

and

Vernon K. Smith, Defendant–
Counterclaimant.

No. 24442.

Supreme Court of Idaho,
Boise, September 1998 Term.

March 12, 1999.

Rehearing Denied July 9, 1999.

Vernon K. Smith, Jr., Boise, for appellant.

Greg H. Bower, Ada County Prosecuting Attorney, Alexander C. Yewer, Deputy Prosecuting Attorney, Boise, for respondent Ada County. Alexander C. Yewer argued.

1. We express no opinion on the validity of the lien declared by the magistrate for reasons set

## ON REVIEW

SILAK, Justice.

This is a review of a Court of Appeals decision concerning a warehouseman's lien, and related issues of a sheriff's liability when executing a writ of execution on personal property and a claim of conversion.

### I.

### FACTS AND PROCEDURAL BACKGROUND

In their divorce action in February 1991, Vernon K. Smith (Vernon) and Sharon K. Smith (Sharon) were each awarded certain separate property items and a share of the community property. Sharon was awarded a monetary judgment secured by a "judicially declared lien" [1] in all of the community property awarded to Vernon.

On April 23, 1991, in an effort to collect on her judgment, Sharon obtained a writ of execution directed to the Ada County Sheriff's Department. Pursuant to the writ, the sheriff was instructed to seize property in accordance with a detailed list of the specific community property awarded to Vernon in the divorce proceeding. The sheriff took possession of the property on May 1, 1991, engaging Peasley Transfer & Storage Co. (Peasley) to pick up the items and to store the property pending an execution sale. On May 15, 1991, prior to the date of sale, Vernon's mother, Victoria H. Smith (Victoria), asserted an interest in some of the property levied upon. She filed a third party claim of exemption, authorized under section 11–203 of the Idaho Code, with the magistrate division of the district court in the divorce action and with the Ada County Sheriff's Office. Prior to the filing of Victoria's third party claim, there was no indication that the property was not Vernon's. Victoria's interest in the personal property was grounded upon an unrecorded, unnotarized bill of sale dated April 10, 1991, from Vernon to Victoria. The bill was signed pursuant to a power of attorney granted by Vernon to counsel who was representing Vernon at the time.

forth in Part IV.B of this opinion.

On June 20, 1991, Sharon's counsel notified the sheriff to release to Vernon all the property levied upon pursuant to the filing of a bankruptcy proceeding by Vernon. The sheriff, on the same day, prepared a letter authorizing Peasley to release to Vernon, or his agent, the property subject to the execution, which was being stored at Peasley's warehouse. The sheriff paid all storage costs incurred from May 1, 1991 to June 21, 1991. Peasley attempted unsuccessfully to have Vernon pick up the property and pay for storage costs that continued to accrue after June 21, 1991. On September 3, 1991, the sheriff sent the June 20, 1991 release letter to counsel representing Vernon in the bankruptcy proceeding. The sheriff stated in the letter that Vernon had refused to come by the sheriff's office to sign for and pick up the June 20, 1991 release letter despite several phone conversations between the sheriff's office and Vernon.

On September 20, 1991, at the request of his attorney representing him in the bankruptcy proceeding, Vernon responded to the sheriff's September 3, 1991 letter. In the letter, Vernon asserted that the sheriff, upon receiving the third party claim, had a duty to return the property or incur liability for the cost of continued storage unless an appropriate bond was posted by Sharon. Vernon also stated that the release letter was invalid because it authorized release to Vernon and not Victoria. On September 24, 1991, Vernon wrote a letter to Peasley informing Peasley that he would not be responsible for any storage costs accruing after June 21, 1991.

Peasley initiated this action against Vernon in October 1992 seeking recovery of storage costs. Peasley amended its complaint in April 1993 seeking recovery of its storage costs from Victoria, as well as from Ada County, the Ada County Sheriff's Department and Sheriff Vaughn Killeen (County Defendants). Additionally, Peasley requested authority to foreclose its warehouseman's lien to satisfy the outstanding indebtedness. On July 9, 1993, Victoria filed a third party claim of exemption under I.C. § 11–203, claiming exemption of property again being seized by the sheriff under a writ of execution issued against Vernon around June 9, 1993 and served on Vernon on June 28, 1993.

In a memorandum decision filed September 14, 1993, the magistrate judge granted summary judgment in favor of Peasley, holding that Peasley held a valid warehouseman's lien. The magistrate further held any deficiency after the sale could be recovered from either Victoria or Sharon, and that Peasley could not look to the County Defendants for a deficiency since the sheriff had acted pursuant to a letter of instruction and a valid writ of execution and since Ada County had acted in compliance with the statutes applicable to the lawful writ of execution and section 31–2211 of the Idaho Code. Consequently, the magistrate dismissed the County Defendants from the action and awarded attorney fees to Peasley.

The only remaining cause of action, Victoria's cross-claim against Sharon, was tried to the magistrate on September 20, 1993. On October 4, 1993, the magistrate found that Vernon had made a bona fide sale of the property to Victoria, but that Sharon had not acted improperly in causing an execution on the property because she had neither actual nor constructive notice of Vernon's transfer to Victoria. The magistrate further held that since Sharon acted in good faith she should be absolved from liability for storage costs and for any deficiency remaining following foreclosure of Peasley's warehouseman's lien. The magistrate found that Victoria had notice of the release of the property and therefore had a duty to retrieve the property. Finally, the magistrate deemed Victoria's cross-claim to be frivolous and without foundation, and awarded attorney fees and costs to Sharon. On October 19, 1993, the magistrate issued a judgment and decree of foreclosure in favor of Peasley against Victoria for storage costs, and foreclosing Peasley's warehouseman's lien.

Victoria appealed from the summary judgment against her and in favor of Peasley, the judgment and attorney fee award entered in favor of Sharon on the cross-claim, and an order dated April 20, 1994, granting Sharon an award for advancement of attorney fees and costs on appeal to the district court. By memorandum decision dated August 17, 1994, the district court affirmed the magistrate's rulings. Victoria filed a timely appeal. In an unpublished substitute opinion of the Court of Appeals dated October 3, 1997,

the magistrate's decision was reversed in part, vacated in part, and remanded. *See Peasley v. Smith,* (Idaho Ct.App. Oct. 3, 1997) (Substitute Opinion). The Court of Appeals held: (1) that the magistrate erred in dismissing the County Defendants from the action pursuant to Peasley's summary judgment because there were disputed questions of material fact relating to the timeliness of their actions in releasing the property; (2) that the magistrate erred in granting summary judgment in favor of Peasley because the sheriff was not a legal possessor of the property at the time of delivery to Peasley and thus did not possess a valid warehouseman's lien; (3) that Sharon's good faith in submitting the writ of execution would not absolve her from liability for conversion of Victoria's property; and (4) that attorney fees should not have been awarded to Peasley or Sharon at trial or on appeal to the district court by order or in the form of an advancement. The County Defendants filed a timely petition for review to this Court which was granted. Neither Sharon nor Peasley submitted a brief in support of their positions, and neither Sharon nor Peasley argued their positions at the review hearing.

## II.

## ISSUES ON APPEAL

The County Defendants raise the following issues in their petition for review:

A. Whether the magistrate erred in holding that Peasley had a valid warehouseman's lien against the property seized by the Ada County Sheriff under a writ of execution which was regular on its face even though the property seized was not the judgment debtor's.

B. Whether the magistrate in the original divorce action had legal authority to impose a judicial lien on the community property awarded to Vernon to secure the judgment awarded to Sharon.

C. Whether issues decided by the Court of Appeals are res judicata for the County Defendants on remand.

The following issues are also raised on appeal:

D. Whether the magistrate erred in dismissing the County Defendants from the action pursuant to Peasley's motion for summary judgment.

E. Whether the magistrate erred in finding for Sharon on Victoria's cross-claim.

F. Whether the awards of attorney fees were proper.

## III.

## STANDARD OF REVIEW

In cases that come before this Court on a petition for review of a Court of Appeals decision, this Court gives serious consideration to the views of the Court of Appeals but directly reviews the decisions of the trial court. *See Marshall v. Blair,* 130 Idaho 675, 679, 946 P.2d 975, 979 (1997) (citing *Schiewe v. Farwell,* 125 Idaho 46, 49, 867 P.2d 920, 923 (1993)). "When we review a case appealed from a district court's appellate review of a magistrate's decision, this Court makes an independent appellate review of the magistrate's decision, after giving due regard to the district court's ruling." *Ausman v. State,* 124 Idaho 839, 840, 864 P.2d 1126, 1127 (1993). If the magistrate's findings of fact are supported by substantial and competent evidence, we will uphold those findings on appeal. *See McNelis v. McNelis,* 119 Idaho 349, 351, 806 P.2d 442, 444 (1991). However, this Court exercises free review of the trial court's conclusions of law. *See Clements Farms, Inc. v. Ben Fish & Son,* 120 Idaho 185, 188, 814 P.2d 917, 920 (1991). Thus, this Court may substitute its view for that of the trial court on a legal issue. *See* Standards of Appellate Review in State and Federal Courts, IDAHO APPELLATE HANDBOOK § 4.2 (1996).

In an appeal from summary judgment this Court will only determine: 1) whether there is a genuine issue as to any material fact; and 2) whether the moving party is entitled to judgment as a matter of law. *See Mitchell v. Bingham Mem'l Hosp.,* 130 Idaho 420, 422, 942 P.2d 544, 546 (1997). This determination is to be based on the "pleadings, depositions,

and admissions on file, together with the affidavits, if any." I.R.C.P. 56(c). However, the Court should liberally construe the facts in favor of the party opposing the motion, together with all reasonable inferences from the evidence. *See Mitchell*, 130 Idaho at 422, 942 P.2d at 546.

## IV.

## ANALYSIS

**A. The Magistrate Did Not Err In Holding That Peasley Had A Valid Warehouseman's Lien Against The Property Seized By The Ada County Sheriff Under A Writ Of Execution Which Was Regular On Its Face.[2]**

Victoria contends that Peasley could not have had a valid warehouseman's lien under section 28–7–209(3)(b) of the Idaho Code, because the sheriff was not the legal possessor of Victoria's property upon delivery to Peasley. In this respect, Victoria argues that the sheriff had a duty to inquire into the ownership of Victoria's property prior to seizure, and that since he did not, the sheriff could not have been the legal possessor of the property.

Section 28–7–209(3)(b) of the Idaho Code states that "[a] warehouseman's lien on household goods ... is also effective against all persons if the depositor was the legal possessor of the goods at the time of deposit...." *Id.* Therefore, a valid warehouseman's lien exists where the sheriff is a "legal possessor" of the property at the time it is deposited with the warehouseman. Thus, Peasley possessed a valid warehouseman's lien if the sheriff was a "legal possessor" of the property when he deposited it with Peasley.[3]

■ In determining whether the sheriff in this case was a "legal possessor" at the time of deposit, it is necessary to assess the sheriff's legal duties pursuant to the execution of the writ. First, it is well-established that a sheriff has an affirmative legal duty to execute a facially valid writ of execution and is not required to go behind the writ to verify its validity. *See* I.C. § 31–2213 (stating that the sheriff "is justified in the execution of, and must execute, all process and orders *regular on their face* ....") (emphasis added). In *Peterson v. Merritt*, 25 Idaho 324, 137 P. 526 (1913), the Court stated:

> Process may have been procured through fraud or perjury, or a court which has ordered it may have committed the most serious errors or have exceeded its jurisdiction after once having exercised that

2. At the hearing in this appeal, counsel for Victoria advised the Court that, after the trial, Victoria paid the storage and transport charges incurred after June 21, 1991, in order to have her property returned. Therefore, a review of the magistrate's finding that Peasley possessed a valid warehouseman's lien in this case might appear moot because such a determination is only necessary where a warehouseman is seeking to foreclose its claimed warehouseman's lien. However, we decline to consider the effect of such a payment here because the record contains no indication of such a payment, and a determination of the validity of Peasley's claimed warehouseman's lien and a clarification of I.C. § 28–7–209(3)(b) remain important to a resolution of this case on remand. Moreover, this issue is justified under the "public interest" exception to the mootness doctrine because disputes involving warehouseman's liens are "susceptible to repetition yet avoid[ ] review." *See Great Beginnings Child Care, Inc. v. Office of the Governor*, 128 Idaho 158, 160, 911 P.2d 751, 753 (1996). Addressing this issue here would be in the public interest because of the importance of providing "future direction and guidance" on the meaning of I.C. § 28–7–209(3)(b). *Id.*

3. It is true that the legal possessor status of the sheriff only grants Peasley a warehouseman's lien valid against "all persons" with respect to "household" goods. *See* I.C. § 28–7–209(3)(b). Household goods "means furniture, furnishings and personal effects used in a dwelling." *Id.* It is noted that not all of the property originally executed upon consisted of "household" goods. In particular, Peasley originally obtained possession of a number of leafcutter bee boards. However, the leafcutter bee boards were picked up by Vernon on June 25, 1991 (just five days after all the property was released). Peasley did not assert its warehouseman's lien over the remaining property until October 15, 1992. Therefore, the character of the bee boards is irrelevant since Peasley did not have possession of the bee boards when the warehouseman's lien was asserted. At the time Peasley asserted its warehouseman's lien, the only property Peasley asserted its lien against consisted entirely of furniture and personal effects. Victoria has never suggested that the pieces of property stored by Peasley were not household goods.

jurisdiction, but if these facts do not appear on the face of the process ... the officer may execute it and legally justify his action. It would be a most dangerous thing if every peace officer should be obliged to examine into the merits of the case and every step taken by the officer who issued process before going about his duty to serve and execute such process. *Id.* at 332, 137 P. at 529.

█ This Court has also stated that "[w]hen an officer proceeds to execute an attachment, he is authorized to seize any personalty found in the defendant's possession, if he has no reason to suppose it to be the property of another." *Oakes v. American Sur. Co. of N.Y.,* 58 Idaho 482, 490, 76 P.2d 932, 936 (1938). The Court in *Oakes* also stated that an attachment is not wrongful unless an officer "knows when he attaches personal property that it does not belong to the defendant." *Id.* In this case, the sheriff possessed a facially valid writ of execution with directions to levy on specifically listed property. Victoria's interest in the personal property was grounded upon an unrecorded, unnotarized bill of sale dated April 10, 1991, from Vernon to Victoria. Under these circumstances, the sheriff acted consistent with his legal obligations in seizing the property pursuant to the writ.

█ A sheriff's possession of property seized pursuant to a validly issued writ of execution is lawful pending the outcome of proceedings under I.C. § 11–203, which governs the determination of competing claims for possession of property seized pursuant to a writ of execution. *See* I.C. § 11–203. Of course, if a sheriff fails to perform his statutory duties under I.C. § 11–203, he may be liable for his failure. However, for purposes of a warehouseman's lien under I.C. § 28–7–209(3)(b), it is necessary to determine only whether the sheriff's possession was legal at the time the property was deposited with the warehouseman. *See Smithers v. Tru–Pak Moving Systems, Inc.,* 121 N.C.App. 542, 468 S.E.2d 410, 414 (1996); *cf. Cordle v. Lincoln Moving & Storage, Inc.,* 19 UCC Rep. Serv. 1204, 1205 (Neb.Dist.Ct.1976) (suggesting that, had Nebraska adopted § 7–209(3)(b), an officer placing property in storage pursuant

to court order would be in legal possession of the property); *Disch v. Raven Transfer & Storage Co.,* 17 Wash.App. 73, 561 P.2d 1097, 1100 (1977) (suggesting that, had Washington adopted § 7–209(3)(b), legal possession by the sheriff depositor would create a warehouseman's lien); *Moore v. Republic Moving & Storage, Inc.,* 548 N.E.2d 1211, 1213 (Ind. Ct.App.1990).

█ Because the sheriff in this case properly seized the property pursuant to a facially valid writ, we hold that he was a "legal possessor" for purposes of I.C. § 28–7–209(3)(b). The sheriff in this case merely fulfilled his duty under Idaho law to execute valid process, and he properly deposited the property with Peasley while a "legal possessor" of the property. Therefore, we hold that the magistrate did not err in granting summary judgment in favor of Peasley on the ground that the sheriff was a legal possessor and that Peasley consequently possessed a valid warehouseman's lien.

**B. Whether The Magistrate In The Original Divorce Action Had Legal Authority To Impose A Judicial Lien On The Community Property Awarded To Vernon To Secure The Judgment Awarded To Sharon Is Not Reviewable In This Appeal.**

The Court of Appeals, in its substitute opinion, suggested that the magistrate, in the underlying divorce action, did not have the authority to grant a judicial equitable lien in favor of Sharon Smith on the community property awarded to Vernon Smith. However, neither the district court nor the Court of Appeals was asked by any of the parties to address this issue. Moreover, the validity of the magistrate's judgment and decree of divorce was appealed by Vernon to this Court in *Smith v. Smith,* 124 Idaho 431, 860 P.2d 634 (1993). Therefore, we decline to address this issue.

**C. Issues Decided By The Lower Courts Following The Grant Of Summary Judgment Are Not Res Judicata For The County Defendants.**

█ Because the County Defendants were dismissed from this action by the mag-

istrate's September 20, 1993 order granting summary judgment to Peasley, they did not have an opportunity to litigate subsequent issues of property ownership, conversion, or attorney fees. Therefore, no issues relevant to the County Defendants which were decided after their dismissal are res judicata as to the County Defendants. On remand, the County Defendants may litigate their claims and defenses relating to these issues. In addition, the magistrate's findings of fact were made after Peasley and the County Defendants were dismissed from the case. Therefore, these facts may be subject to relitigation since those two parties never participated in their determination.

### D. The Trial Court Erred In Dismissing The County Defendants From The Action Pursuant To Peasley's Motion For Summary Judgment.

Victoria challenges the magistrate's dismissal of the County Defendants from the action as part of its ruling on Peasley's motion for summary judgment. Victoria argues that a question of fact existed as to whether the County Defendants complied with the applicable execution statutes in timely releasing the property to Victoria. In particular, Victoria's cross-claim alleges that the sheriff improperly delayed in releasing the property following Victoria's third party claim.

On May 15, 1991, Victoria filed a third party claim of exemption, authorized under I.C. § 11–203, with the magistrate division of the district court in the divorce action and with the Ada County Sheriff's Office. On June 20, 1991, Sharon's counsel notified the sheriff to release to Vernon all the property levied upon, pursuant to Vernon's filing of the bankruptcy proceeding. The sheriff, on the same day, notified Peasley by letter to release to Vernon, or his agent, the property subject to the execution, which was being stored at Peasley's warehouse. The sheriff at that time paid all storage incurred from May 1, 1991 to June 21, 1991. Peasley attempted unsuccessfully to have Vernon pick up the property and pay for storage costs that continued to accrue after June 21, 1991. On September 3, 1991, the sheriff sent the June 20, 1991 release letter to counsel representing Vernon in a bankruptcy proceeding. The sheriff stated in the letter that Vernon had refused to come to the sheriff's office to sign for and pick up the June 20, 1991 release letter despite several phone conversations between the sheriff's office and Vernon.

■ In ruling on Peasley's motion for summary judgment, the magistrate identified controverted material facts and facts not in dispute. It is undisputed that the sheriff was served with a third party claim by Victoria pursuant to I.C. § 11–203. I.C. § 11–203 of the Idaho Code, as in effect in May 1991, provided in part:

If the property levied on be claimed by a third party as his property, ... by a written claim verified by the oath of said claimant, setting out his title thereto, his right to the possession thereof, and stating the grounds of such title or of such claim of exemption, ... and served upon the sheriff, the sheriff is not bound to keep the property, unless the plaintiff, or the person in whose favor the writ of execution runs, on demand, indemnify the sheriff against such claim by an undertaking qualifying in the state of Idaho.

Provided, however, that if the plaintiff or the person in whose favor the attachment or execution runs, by failure to so indemnify the sheriff, or otherwise, releases said claimed property, the sheriff shall release the property to the defendant, or his agent, from whom the property was taken.

I.C. § 11–203 (1990) (amended 1991). This statute plainly directs the sheriff to release the property to the defendant where the plaintiff fails to indemnify the sheriff or releases the property. In this case, due to the early dismissal of the County Defendants from the action, the magistrate never addressed the timeliness of the County Defendants' delay in releasing Victoria's property. A period of thirty-five days passed between the time Victoria filed her third party claim of exemption and the time the sheriff prepared a letter of release. It was not until September 3, 1991, that the sheriff sent the June 20, 1991 release letter to counsel representing Vernon.

Although the sheriff apparently tried repeatedly to have Vernon pick up the release

letter prior to September 3, 1991, the reasonableness of the County Defendants' actions was not addressed by the trial court. Summary judgment is appropriate only when there are no genuine issues of material fact and the case can be decided as a matter of law. *See Mitchell v. Bingham Mem'l Hosp.,* 130 Idaho 420, 422, 942 P.2d 544, 546 (1997). The timeliness of the County Defendants' actions is a material issue in this case and it remains disputed. The magistrate should not have determined the timeliness of the sheriff's release because that issue pertained to Victoria's cross-claim and was not put at issue by Peasley's summary judgment motion. Thus, we hold that the magistrate erred in dismissing the County Defendants from the action upon Peasley's summary judgment motion, and we vacate the magistrate's order dismissing the County Defendants and remand to the magistrate to permit Victoria to pursue her cross-claim against the County Defendants.

### E. The Magistrate Did Not Err In Finding For Sharon On Victoria's Cross-claim.

In pronouncing its findings, the magistrate found that no prima facie case of conversion had been made. As a result, the magistrate denied Victoria any recovery on her conversion claim. We agree.

In a memorandum decision entered on September 14, 1993, the magistrate found that Peasley possessed a valid warehouseman's lien pursuant to I.C. § 28–7–209, and that the County Defendants had acted properly in all respects regarding the property in question pursuant to I.C. § 31–2213. The property list Sharon provided the sheriff contained only a list of the particular property which was included and adjudicated as either community and/or separate property of Sharon and Vernon in the divorce decree. The magistrate found that, at the time of the issuance of the writ of execution, Sharon had every right to believe that the property on which she was executing was still owned by Vernon. The magistrate found that no bill of sale from Vernon to Victoria was ever recorded, and no notice of any kind was given to Sharon indicating a transfer of ownership of any of the property listed in the letter of instruction accompanying the writ of execution, prior to the filing of Victoria's third party claim of exemption on May 15, 1991. The magistrate also found that, before the sale of the property and subsequent to the third party claim filed by Victoria, the property was released by Sharon on June 20, 1991, and Victoria, through her agent Vernon, received constructive notice of the release. The magistrate further held that, upon release, a third party claimant has a duty to retrieve the property, but that Victoria chose not to retrieve the property and must therefore suffer the consequences.

### 1. Victoria had notice of the release of the property.

The magistrate found that Victoria received constructive notice through her agent Vernon that the property was released. The magistrate also found that Victoria had received constructive notice either through her agent Vernon, or otherwise, that the property was already subject to the judgment and the lien language contained in the divorce decree. The magistrate pointed to the exhibits consisting of the letters of Vernon as an agent for Victoria dated September 20, 1991 and September 24, 1991, as verification that Vernon had notice of the release of the property. In addition, the unusual facts of this case further demonstrate that Victoria had notice of the release. Vernon is Victoria's son and has represented her interests throughout the course of this matter. Therefore, we agree with the magistrate that Victoria had notice of the release of the property on June 20, 1991.

### 2. Victoria had a duty to retrieve her property upon receiving notice of the release.

Because Peasley possessed a valid warehouseman's lien, it was entitled to a judgment and decree of foreclosure. The magistrate issued a judgment and decree of foreclosure on October 21, 1993, holding Victoria liable for storage costs accruing after June 20, 1991. Victoria appeals the magistrate's holding that a third party claiming personal property wrongfully attached and

executed is obligated to retrieve the property upon notice of the property's release under I.C. § 11-203.

Section 11-203 of the Idaho Code, as in effect when Victoria filed her third party claim, provided that if the plaintiff or other person in whose favor the execution runs, notifies the sheriff to release the property "the sheriff shall release the property to the defendant, or his agent, from whom the property was taken...." I.C. § 11-203 (1990) (amended 1991). This section required the sheriff only to "release" the property, and there is no language requiring the sheriff to physically return the property to the owner. Cf. Harri v. Isaac, 111 Mont. 152, 107 P.2d 137, 141 (1940) ("'Release' means 'to let loose, to set at liberty, to let go.' It cannot be taken to mean a delivery to someone ...." (quoting National Bank of Montana v. First Nat'l Bank, 71 Mont. 242, 228 P. 80, 81 (1924))). If the legislature intended to impose a duty to actually "deliver" the property, such language would appear. Section 11-308 of the Idaho Code provides that in the case of levied property bought at an execution sale, "the officer making the sale must deliver to the purchaser the property...." I.C. § 11-308. The inclusion of the "deliver" language in I.C. § 11-308 versus the absence thereof in I.C. § 11-203 supports the conclusion that the absence is intentional. We interpret statutes according to the plain, express meaning of a provision in question, and we will resort to judicial construction only if the provision is ambiguous, incomplete, absurd, or arguably in conflict with other laws. See, e.g., Cameron v. Minidoka County Highway Dist., 125 Idaho 801, 803, 874 P.2d 1108, 1110 (1994); Lawless v. Davis, 98 Idaho 175, 177, 560 P.2d 497, 499 (1977). Because the plain meaning of I.C. § 11-203 requires the sheriff only to "release" the property, we hold that I.C. § 11-203 does not impose an affirmative duty on the part of the sheriff to deliver the property to a third party claimant upon release.

3. **The magistrate did not err in denying Victoria relief on her cross-claim.**

The magistrate, in denying Victoria relief on her cross-claim against Sharon, concluded that Victoria failed to establish a cause of action against Sharon. As a general rule, pleadings are liberally construed so as to do substantial justice. See I.R.C.P. 8(f); Tew v. Manwaring, 94 Idaho 50, 52, 480 P.2d 896, 898 (1971). A complaint which alleges that plaintiff is the owner and entitled to the possession of property therein described and that defendant converted it to his own use, and which states the value of the property, or alleges that plaintiff has been damaged in a sum named, sufficiently states a cause of action for conversion, unless other averments are required by statute. See Williams v. Bone, 74 Idaho 185, 187-88, 259 P.2d 810, 811 (1953). Victoria's cross-claim alleged her ownership, entitlement to possession, and that Sharon converted the property causing Victoria damage.

In denying Victoria relief on her cross-claim against Sharon, the magistrate concluded that Victoria had failed to prove damages. The proper measure of damages for wrongful taking or detention of personalty is the reasonable value of its use during the detention period. National Motor Service Co. v. Walters, 85 Idaho 349, 360-61, 379 P.2d 643, 651 (1963); Weaver v. Pacific Finance Loans, 94 Idaho 345, 347, 487 P.2d 939, 941 (1971). Further, an owner who retakes converted property may recover damages based on value at the time of conversion, but in mitigation, the wrongdoer is entitled to credit for value of property when returned, though he is charged with value of its use for the period of wrongful detention. See National Motor Service Co., 85 Idaho at 361, 379 P.2d at 651.

We find no reason to question the magistrate's finding that Victoria suffered no damage because of the loss of use of the property. Victoria herself admitted at trial that she had not lost income or suffered any economic loss or expense due to the property's absence. Further, Victoria's damages do not include the costs of storage prior to June 21, 1991 because those charges were paid by the sheriff. Finally, in light of our holding that Victoria, upon receiving notice of the release, had a duty to retrieve her property from Peasley, her damages do not include amounts

Victoria could have avoided by retrieving her property promptly, including the costs of storage incurred subsequent to June 21, 1991. This Court has held that the duty to mitigate, also known as the "doctrine of avoidable consequences," provides that a plaintiff who is injured by actionable conduct of a defendant is ordinarily denied recovery for damages which could have been avoided by reasonable acts, including reasonable expenditures, after actionable conduct has taken place. *See Margaret H. Wayne Trust v. Lipsky*, 123 Idaho 253, 261, 846 P.2d 904, 912 (1993). After receiving notice of the release of the property, Victoria had a duty to mitigate her damages by retrieving the property from Peasley. Therefore, we affirm the magistrate's finding that Victoria is liable for storage costs which accrued subsequent to June 21, 1991.

 Victoria also argues that she should not be required to pay the cost of returning the property and restoring it to her rightful possession. We agree that a third party claimant whose property is wrongfully seized should not bear the cost of returning that property. As a general rule, reasonable and necessary expenses incurred in recovering the property are a proper element of damages in a conversion action. See 89 C.J.S *Trover & Conversion* § 174 (1955). Although the magistrate erred in finding that Victoria suffered no damages, the demonstration of damages does not sustain a cause of action for conversion in this case.

 The magistrate also concluded that there was no evidence of conversion of Victoria's property by Sharon because there was no showing of any fraudulent or wrongful attachment by Sharon. Generally, conversion is defined as a distinct act of dominion wrongfully asserted over another's personal property in denial of or inconsistent with rights therein. *See Luzar v. Western Sur. Co.*, 107 Idaho 693, 696, 692 P.2d 337, 340 (1984). A right of action accrues in favor of the owner of property as soon as the property is wrongfully taken from his possession or wrongfully converted. *See Davidson v. Davidson*, 68 Idaho 58, 63, 188 P.2d 329, 332 (1947). The magistrate in this case considered Sharon's

good faith request for execution on property she believed to be Vernon's in denying Victoria relief on her cross-claim against Sharon. However, where there has been a positive act of dominion over another's property, unauthorized by the owner, it is not necessary that the actor intend to commit a trespass or a conversion. *See Wiseman v. Schaffer*, 115 Idaho 537, 540–41, 768 P.2d 800, 803–04 (Ct.App.1989). An actor may be liable where he has in fact exercised dominion or control, although he may be quite unaware of existence of rights with which he interferes, and a defendant's intention, good or bad faith, and his knowledge or mistake are immaterial. *See Carver v. Ketchum*, 53 Idaho 595, 601, 26 P.2d 139, 141 (1933). Thus, Sharon's subjective intent or good faith is immaterial to whether a conversion occurred.

However, the circumstances of this case involve much more than a simple good faith mistake of a judgment creditor in wrongfully executing on the property of an innocent third party. In this case, Sharon possessed a valid judgment against Vernon in the amount of $202,526.13 which was secured by a lien on specific property awarded to Vernon in the divorce decree. The magistrate found that Sharon had no notice that the property had been transferred to Victoria prior to her third party claim, but the magistrate did find that Victoria had notice that the property transferred to her by Vernon was subject to a lien imposed as part of the divorce proceeding. The magistrate also found that Sharon properly released the property upon Vernon's filing of a bankruptcy proceeding and after the filing of Victoria's third party claim.

 Conversion, being a wrongful and tortious act, cannot originate in the exercise of a legal right, such as the right of execution on a judgment. *See Carver v. Ketchum*, 53 Idaho 595, 601, 26 P.2d 139, 141 (1933); *see also Schlieff v. Bistline*, 52 Idaho 353, 357, 15 P.2d 726, 728 (1932). In this case, Sharon was simply exercising a legal right in executing a court judgment without knowledge of the transfer of the property to Victoria. Therefore, Sharon's execution was not wrongful. Moreover, if possession of property was not acquired by a tortious taking or

the possessor does not appropriate or use the property in a fashion to indicate a claim thereto adverse to the owner, then no evidence of a conversion exists until there is proof, first, that a proper demand for possession was made by the one who is entitled thereto and, second, that the possessor wrongfully refused delivery. *See, e.g., Oakes v. American Sur. Co. of N.Y.,* 58 Idaho 482, 491, 76 P.2d 932, 936 (1938) (holding that cause of action against sheriff did not accrue until the plaintiff made demand for the possession and the sheriff refused to comply with the demand); *Evans v. Carroll & Co.,* 155 F.Supp. 662, 667 (D.Mont.1957), *aff'd* 259 F.2d 577, 579 (9th Cir.1958) ("Where possession is obtained rightfully in the first instance, a demand and refusal ordinarily are necessary in order to put the party charged with conversion in the wrong and give rise to the cause of action."); *Production Credit Ass'n of Madison v. Nowatzski,* 90 Wis.2d 344, 280 N.W.2d 118, 123 (1979) (holding that where there is no unlawful taking, a demand by the rightful owner and a refusal by the alleged tortfeasor are necessary elements of the tort of conversion); *cf. Gissel v. State,* 111 Idaho 725, 730–31, 727 P.2d 1153, 1158–59 (1986) (Bakes, J., dissenting) (stating that a party claiming a conversion must show a demand for possession of the property at issue). Obtaining a release of property under I.C. § 11–203 and maintaining a conversion claim have separate purposes, different remedies, and unique elements of procedure and proof. Receiving notice of a third party claim for a release. of property through the I.C. § 11–203 process simply does not constitute notice of a demand for the return of property for purposes of a conversion claim.

■ Therefore, we hold that a third party claimant does not have a cause of action for conversion where a judgment creditor, who without notice of any transfer of ownership, executes a writ of execution against specific property where the third party fails to properly demand possession of the property prior to filing a conversion action. Thus, Victoria may not recover from Sharon in a conversion action because Sharon, without notice of Vernon's transfer to Victoria, was merely exercising the legal right of enforcing the judgment lien on the specific property listed in the divorce decree. Accordingly, we hold that the magistrate did not err in finding in favor of Sharon on Victoria's cross-claim.

### F. Attorney Fees

On September 20, 1993, the magistrate granted summary judgment in favor of Peasley and stated that "[a]ttorney's fees and costs will be awarded to Peasley Transfer and Storage upon proper application." Peasley had prayed for an award of attorney fees in their answer to Victoria's counterclaim. On October 19, 1993, the magistrate entered a judgment and decree of foreclosure in favor of Peasley against Victoria for storage costs and attorney fees, and foreclosing Peasley's warehouseman's lien. Victoria appeals this award of attorney fees.

With respect to the magistrate's award of attorney fees to Peasley as the prevailing party, Victoria filed a written objection in which she stated that the fees were "unreasonable." She concluded her objection as follows:

> This objection to the Memorandum of Costs and Attorneys Fees is made pursuant to Rule 54(d)(6), and 54(e)(6), I.R.C.P. Inasmuch as the Objection here is deemed to be a Motion to Disallow such costs and attorney fees, the parties do request oral argument upon this Motion in accordance with Rule 7(b)(3).

■ No transcript was provided of the attorney fees hearing held in October 1993. Neither did Victoria provide records showing the grounds for the alleged error of the attorney fee award. Where an incomplete record is presented to an appellate court, missing portions of the record are presumed to support the action of the trial court. *See Kugler v. Drown,* 119 Idaho 687, 690, 809 P.2d 1166, 1169 (Ct.App.1991). Further, it is Victoria's affirmative duty on appeal to show that the magistrate erred. *See id.* Victoria never specifically argued this point in any of her briefs, nor did she provide any authority for reversal. Because Victoria has failed to demonstrate an abuse of discretion by the magistrate in awarding attorney fees to Peasley, we affirm the magistrate's award of attorney fees to Peasley. We also affirm the

district court's award of attorney fees on appeal in favor of Peasley against Victoria.

Victoria also appeals the magistrate's award of attorney fees against her in favor of Sharon. On October 19, 1993, at a hearing to determine attorney fees, the magistrate ruled that Sharon was entitled to attorney fees as the prevailing party under section 12–120 of the Idaho Code. The magistrate further ruled that attorney fees to Sharon were justified under section 12–121 of the Idaho Code based on the magistrate's finding that the cross-claim by Victoria was pursued frivolously and without foundation. The magistrate based this finding on Victoria's failure to show damages and her failure to provide evidence showing a cause of action.

■■■■ An award of attorney fees under I.R.C.P. 54(e)(1) and I.C. § 12–121 is subject to reversal upon a showing of an abuse of discretion by the district court. *See Savage Lateral Ditch Water Users Ass'n v. Pulley,* 125 Idaho 237, 250, 869 P.2d 554, 567 (1993). When an exercise of discretion is involved, an appellate court conducts a three-step inquiry: (1) whether the trial court properly perceived the issue as one of discretion; (2) whether that court acted within the outer boundaries of such discretion and consistently with any legal standards applicable to specific choices; and (3) whether the court reached its decision by the exercise of reason. *See Id.* at 250–51, 869 P.2d at 567–68 (citing *Sun Valley Shopping Center v. Idaho Power Co.,* 119 Idaho 87, 94, 803 P.2d 993, 1000 (1991)). In this case, the magistrate stated his recognition that the issue was one of discretion at the hearing to determine the issue of attorney fees. There was no abuse of discretion by the magistrate in making the award. Victoria suffered only minimal damages by the seizure of the property and she failed to establish a cause of action. Therefore, because we affirm the magistrate's finding in favor of Sharon on Victoria's cross-claim, we affirm the magistrate's attorney fee award under I.C. § 12–121. Consequently, we also affirm the district court's award of attorney fees in favor of Sharon against Victoria.

The remaining claim of error raised by Victoria deals with the award of attorney fees made to Sharon, by the magistrate, as an advance to allow her to defend the appeal to the district court. Victoria contends that it was error for the magistrate to order that she pay $4,000 toward Sharon's attorney fees and costs to defend the appeal in the district court.

■■■■ At a hearing on Sharon's motion for advancement of attorney fees and costs on appeal, the magistrate found that Sharon had demonstrated her indigence and inability to pay attorney fees and costs to defend the appeal filed by Victoria. The magistrate also found that Victoria was not only able to pay, but was not incurring attorney fees and costs as she was being represented by her son, Vernon, in the matter. After due consideration of I.R.C.P. 83(i) and I.A.R. 13(b)(12), the magistrate granted the motion and ordered Victoria to pay Sharon $4,000 as an advancement toward fees and costs to be incurred in defending the appeal. The above rules provide that the magistrate has the authority to make any order which it deems appropriate for the payment or advancement of attorney fees and anticipated costs on appeal by one party to the other, subject to the order of this Court on appeal. The advancement of attorney fees in favor of Sharon was thus clearly within the discretion of the magistrate, and we are presented with no argument or authority in support of Victoria's contention that the advancement of attorney fees was in error. *See State v. Zichko,* 129 Idaho 259, 263, 923 P.2d 966, 970 (1996) ("When issues on appeal are not supported by propositions of law, authority, or argument, they will not be considered.").

Although we find no reason to question the discretionary judgment of the magistrate in ordering the advancement, we affirm the magistrate's order advancing fees to Sharon for appeal provided that Sharon's attorney file with this Court within a reasonable time a satisfactory showing that the advanced funds were appropriately applied towards defending the appeal of the magistrate's decision.

## V.

### CONCLUSION

For all of the foregoing reasons, we affirm the magistrate's grant of summary judgment

in favor of Peasley and the magistrate's finding in favor of Sharon on Victoria's cross-claim. However, we hold that the magistrate erred in dismissing the County Defendants from the action. We remand the case to the magistrate for further proceedings consistent with this opinion. Sharon's attorney shall provide an accounting of the advancement within twenty-one (21) days from the date of this opinion. Each side shall bear its own costs and attorney fees in this appeal.

Justice SCHROEDER and Justices Pro Tem JOHNSON, WOOD and MEEHL, CONCUR.