# IN THE SUPREME COURT OF THE STATE OF IDAHO
## Docket No. 50549

| | |
|---|---|
| TONY WAYNE HEATH, an individual, )<br><br>   Plaintiff-Appellant, )<br><br>v. )<br><br>DENNY'S WRECKER SERVICE, INC., an )<br>Idaho corporation; MELISSA MARIE LISH, )<br>an individual, )<br><br>   Defendants-Respondents, )<br><br>and )<br><br>DOES I through X, entities or individuals )<br>whose true identities are presently unknown, )<br><br>   Defendants. ) | Pocatello, June 2024 Term<br><br>Opinion Filed: December 17, 2024<br><br>Melanie Gagnepain, Clerk |

Appeal from the District Court of the Sixth Judicial District, State of Idaho, Bannock County. Aaron N. Thompson, Magistrate Judge, and Mitchell W. Brown, District Judge.

The order of the district court is <u>affirmed in part</u> and <u>reversed in part</u>.

Norman G. Reece, P.C., Chubbuck, for Appellant, Tony Wayne Heath. Norman G. Reese, Jr. argued.

Echo Hawk & Olsen, PLLC, Pocatello, for Respondent, Denny's Wrecker Service, Inc. Eric L. Olsen argued.

Merrill & Merrill, Chtd., Pocatello, for Respondent, Melissa Marie Lish. Kent A. Higgins submitted argument on the briefs.

———————————

MEYER, Justice.

Tony Heath and Melissa Lish were next door neighbors in Chubbuck, Idaho. A dispute arose between them after Heath parked two vehicles with their right tires abutting Lish's driveway. Lish demanded that Heath move the vehicles, and he refused. Ultimately, she obtained a no parking sign from Denny's Wrecker and had Denny's tow the vehicles. Denny's then refused to release the vehicles to Heath without payment of the towing and storage charges, capped at $1,500. Heath

1

sued Lish and Denny's for civil trespass and conversion. The magistrate court entered summary judgment against Heath and in favor of Lish and Denny's. The magistrate court awarded attorney fees to Denny's as the prevailing party. Heath appealed and the district court affirmed the magistrate court's judgments. Heath then appealed to this Court, with Denny's cross-appealing on the limited issue of attorney fees. We affirm in part and reverse in part. The grant of summary judgment against Heath and in favor of Denny's is affirmed. The grant of summary judgment against Heath and in favor of Lish is reversed because genuine issues of material fact exist concerning whether there was boundary by acquiescence or boundary by agreement. The district court's order reducing the amount of attorney fees to Denny's is reversed. We decline to award attorney fees on appeal.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Heath lived at 5130 Dorian Street, in Chubbuck, Idaho. Lish lived next door at 5120 Dorian Street with her husband, Levi. Their properties are separated by a fence and a driveway. The fence extends to the back of the properties and separates their backyards. The driveway extends past the fence line that separates the properties' backyards, out to the street. A side fence stretches across the width of the driveway on the Lish side of the property.

The survey obtained by Heath purports to show the line between the two properties as it relates to the driveway.



2

Photographs taken by Lish purport to show the location of Heath's cars before they were towed:





The Lish property was previously owned by Jody Bloxham, Lish's mother-in-law ("Bloxham"). The Heath property was previously owned first by Michael J. Jensen ("Jensen"), and later by Heath Scott ("Scott"). As discussed below, Lish and Heath both relied on declarations from the previous owners in support of their cross-motions for summary judgment. Heath appeals from the district court's order affirming several of the magistrate court's decisions in connection with Denny's and Lish's motions for summary judgment as discussed in more detail below. Denny's cross-appealed on the limited issue of whether the district court erred in reducing the magistrate's award of attorney fees.

## A. Heath's objections to Denny's and Lish's affidavits

Heath objected to several of Denny's and Lish's affidavits on the basis that they (1) did not comply with the business records exception to the rule against hearsay, (2) contained conclusory statements, and (3) lacked foundation. Heath also challenged the admissibility of the Corrected Affidavit of Levi Lish (the "Levi Affidavit"), the Second and Fourth Affidavits of Melissa Lish (the "Lish Affidavit" and the "Fourth Lish Affidavit"). He argues those affidavits were inadmissible because they were made on "personal knowledge and belief," lacked foundation, and contained conclusory statements about the boundary between the two properties. Heath made additional objections to the Affidavit of Aaron Harker (the "Harker Affidavit"), the Supplemental Affidavit of Deann Wilson (the "Wilson Affidavit"), and the Second Affidavit of Anita Hymas (the "Hymas Affidavit"), arguing that they lacked foundation and failed to comply with the business records exception to the hearsay rule.

The district court determined that Heath failed to preserve his objection to the admission of these affidavits because he did not include his objections to the affidavits as part of his issue statement on appeal. The district court noted "[Heath] does not raise, as an issue on appeal, the trial court's ruling on evidentiary rulings on summary judgment," but noted "Heath continues suggesting the trial court erred in refusing to strike Defendants' affidavits as requested by Heath." (Cleaned up). The district court summarily addressed Heath's objections to the affidavits as Heath had devoted "a significant portion of his Appellant's Brief to addressing the claimed error in these evidentiary rulings of the trial court." The district court determined that Heath had not established that the magistrate court erred in admitting the affidavits, nor had he identified how the magistrate court had abused its discretion in admitting the affidavits.

4

On appeal, Heath maintains that he did not waive the issue of whether the challenged affidavits were inadmissible. Heath posits that the affidavits that contain statements that are based on "personal knowledge and belief" are inadmissible because "one cannot tell what statements are based on [the affiant's] belief and what statements are based on [the affiant's] personal knowledge." Heath contends the affidavits with this wording—the Levi Affidavit and Fourth Lish Affidavit—are the equivalent of affidavits made on "information and belief" and do not comply with Idaho Rule of Civil Procedure 56(c)(4). Heath argues that the affidavits should have been stricken for that reason.

Heath also contends that the Levi and Lish Affidavits contain conclusory statements largely related to the boundary between the two properties. The district court affirmed the magistrate court's decision to admit these affidavits, as the magistrate court acknowledged that the statements by Levi and Lish were not dispositive of the boundary dispute in this case. Lish argues on appeal that the district court correctly affirmed the admission of the contested affidavits.

Heath also challenges the admissibility of the Hymas Affidavit, Wilson Affidavit, and Harker Affidavit. He contends that those affidavits do not comply with the business records exception to the hearsay rule. Heath argues that the district court erred in affirming the admission of these affidavits because they lacked foundation. He also maintains that some of the attachments to the affidavits, such as cadastral maps[1] or photographs, obtained by Lish and given to Denny's do not constitute "business records" because they were not created by Denny's in the regular course of its business. Denny's counters that the contested affidavits were properly admitted, and that with respect to the Wilson Affidavit, its contents and attachments are not hearsay because they were submitted to show the information that Denny's relied upon in deciding to tow Heath's vehicles, *not* to show that Heath's vehicles were on Lish's property.

### B. Denny's Motion for Summary Judgment

In its second motion for summary judgment, Denny's contended that there were no genuine issues of material fact in dispute and that it was entitled to summary judgment on Heath's civil trespass and conversion claims. Denny's argued that its actions were legal under Idaho Code sections 49-1806(1) and 49-1806(3), and that it had reasonably relied upon Lish's representations

---

[1] A cadastral map shows or records property boundaries, subdivision lines, buildings, and related details. *See Cadastral*, Merriam-Webster.com, https://www.merriam-webster.com/dictionary/cadastral (last visited Aug. 1, 2024).

that Heath's vehicles were on her property before conducting the tow. Denny's also maintained that the boundary line between the properties was the original driveway and the fence line under the doctrine of boundary by agreement. Denny's argued that Heath could not establish the elements of trespass or conversion, and as a result, Denny's was entitled to summary judgment as a matter of law.

The magistrate court determined that Denny's actions were legal under Idaho Code section 49-1806(1) and that it reasonably relied on Lish's representations about the property line. It explained that "[e]ven if Lish is not ultimately found to be the owner of the property, Denny's had no advanced knowledge whatsoever that contradicted Lish's belief. It was relying on Lish's representations, which included photographs and cadastral maps. Denny's saw appropriate signage." (Cleaned up) (footnote omitted). The magistrate court determined that "there is no duty placed upon Denny's to look past the representations of a patron," and if it were to reach a contrary result that "would be bad policy" that would require "tow companies to conduct title searches, seek out and obtain maps, cadastral maps, and even go to the extent of commissioning a survey before proceeding to tow a vehicle under I.C. § 49-1806(1)." As a result, the magistrate court found that Denny's conduct in towing Heath's vehicles did not amount to conversion. The district court affirmed the magistrate court's decision.

On appeal, Heath contends that the district court erred in affirming the granting of Denny's summary judgment motion because Heath's vehicles were on his property, as shown by the survey. Heath maintains that Denny's cannot rely on Idaho Code section 49-1806(1) to escape liability for conversion or trespass because Denny's had to enter his property to tow his vehicles. Heath also argues that the plain language of Idaho Code section 49-1806 does not apply to tow companies because they are not referenced in the statute—that to the extent section 49-1806 shields individuals from liability for trespass or conversion, it would only apply to Lish's conduct, not to Denny's. Denny's contends that the district court did not err in affirming the grant of summary judgment to Denny's on Heath's trespass and conversion claims because Denny's reasonably relied upon Lish's representations to tow Heath's vehicles.

### C. Denny's attorney fee award

Denny's sought an award of attorney fees under Idaho Code sections 6-202(3)(c) and 12-120(1) after prevailing on summary judgment. On March 17, 2022, the magistrate court awarded Denny's attorney fees under section 6-202(3)(c) after it determined that Heath's civil trespass

claim was without foundation. The magistrate court awarded Denny's $22,796.37 in attorney fees and costs of $272.37. Heath appealed to the district court.

The district court affirmed the attorney fee award to Denny's except for the cost of automated legal research, holding that the magistrate court did not analyze that factor in its decision. Although the district court explained that "[t]he trial court did consider each of the 54(e)(3) factors as expressly addressed in its Order Re: Attorney Fees," it determined that "[t]he trial court did not address sub-part K, automated legal research." It denied Denny's request for $123.87 for the cost of legal research because the trial court's order "does not establish that the trial court considered this sub-part or made the requisite finding that automated research was a reasonable cost or reasonably necessary in preparing Denny's case[.]"

Denny's timely cross-appealed the district court's decision. Denny's argues on appeal that the district court erred in reducing the amount of the attorney fee award because the magistrate court was not required to reduce to writing consideration of every Rule 54(e)(3) factor in its order. Heath maintains that the time entries provided by Denny's were not specific enough to "identify the issue(s) researched via Westlaw, so the magistrate was not able to evaluate whether the research was reasonable, let alone relevant," and that the magistrate court failed to comply with Rule 54(e)(3) in its decision to award attorney fees to Denny's. Heath also argues that the district court erred in affirming the attorney fee award in general because Denny's did not establish that Heath's civil trespass claim lacked foundation.

### D. Lish's Motion for Summary Judgment

In her second motion for summary judgment, Lish argued that Heath's vehicles were on her property and that her actions in having the vehicles removed were lawful under Idaho Code section 49-1806. Lish maintained that, as a result, Heath could not establish that she had wrongfully obtained dominion over his vehicles and his claim for conversion failed. In Lish's reply brief to Heath's summary judgment motion, she contended that the boundary between their two properties was not the property line shown in the survey but was the fence line and original driveway based on boundary by agreement. Lish argued as a result that Heath could not establish his trespass claim.

In support of her motion for summary judgment, Lish provided an affidavit from the previous owner of her property, Bloxham. The Bloxham Affidavit stated that Levi had removed approximately eight inches from the driveway when he tore up part of the cement patio to install

7

a power line, but that "the original cement patio was always accepted by parties on both sides as the true boundary between the two respective properties." Bloxham stated that the original driveway was in place when she purchased 5120 Dorian Street, and that she built the original fence. She indicated the fence was in place for approximately twenty-three years, and the previous owners of Heath's property "agreed to the location of the boundary fence." The Bloxham Affidavit also stated that Heath was aware of the fence's location when he moved in next door and that he "acquiesced to the location of the boundary fence." When the fence was rebuilt, Bloxham claimed Heath consented to the location of the new fence, which was the same location as the old fence.

Heath opposed Lish's summary judgment motion and argued that the survey conducted by Matthew Baker showed Heath's cars were parked on his property and, as a result, Lish was liable for trespass and conversion for having his cars towed. Heath maintained that Lish could not rely on Idaho Code section 49-1806 because her actions were not lawful as his cars were not "standing upon" the Lish property when they were towed. Heath argued that Lish was liable for civil trespass because Lish acted to have Heath's vehicles towed and Denny's went onto Heath's property to conduct the tow. In his reply brief in support of his motion for summary judgment, Heath maintained that Lish had raised the affirmative defense of boundary by agreement too late and that the magistrate court should not consider it. Heath contended that boundary by agreement did not apply in any case because Lish had provided no evidence of a disputed or uncertain boundary or an agreement to fix the fence line and the original driveway as the boundary. Heath relied on the declarations from the previous owners of Heath's property, Jensen and Scott, to show that there was no dispute as to the boundary and no agreement to fix the boundary. Heath also maintained that acquiescence alone was not enough to establish boundary by agreement. Alternatively, Heath argued the fact that Levi removed eight inches from the original driveway negated Lish's claim to boundary by agreement because Levi destroyed the alleged boundary when he tore up part of the driveway to install a power line.

The magistrate court allowed Lish to raise boundary by agreement as an affirmative defense because it was raised before trial, and Heath had an opportunity to respond. It also held that Lish had standing to raise the defense as Levi's spouse and as a resident of 5120 Dorian Street. The magistrate court noted that Lish raised boundary by agreement *as a defense* to Heath's civil trespass claim and not as a separate counterclaim. Ultimately, the magistrate court granted Denny's

8

and Lish's motions for summary judgment on Heath's conversion and trespass claims[2] finding that Lish had established that the fence line and original driveway were the agreed upon boundary between the two properties. It relied on the presumption created by a longstanding fence explained in *Teton Peaks Investment Co. v. Ohme*, 146 Idaho 394, 397, 195 P.3d 1207, 1210 (2008) (quoting *Luce v. Marble*, 142 Idaho 264, 271, 127 P.3d 167, 174–75 (2005)):

> [W]hen a fence line has been erected, and then coterminous landowners have treated that fence line as fixing the boundary between their properties "for such a length of time that neither ought to be allowed to deny the correctness of its location" the law presumes an agreement fixing that fence line as the boundary[.]

The magistrate court determined that the parties' "conduct clearly supports boundary by agreement," because the boundary was changed by the acquiescence of the previous owners and Heath. The magistrate court asked, "Why would [the previous owners] agree to a fence and driveway be built on their property for any other reason than that would be the boundary between the coterminous lots? The time to object to this, if one was warranted, was at the time of the fence erection or the pouring of the concrete." It also determined that Heath had acquiesced to a boundary by agreement by agreeing that Lish could increase the height of the fence and failing to object to Levi removing eight inches from the driveway on Levi's side of the property. As a result, the magistrate court granted Lish's summary judgment motion with respect to Heath's trespass and conversion claims.

Heath appealed to the district court. The district court affirmed the magistrate court's decision to grant summary judgment in Lish's favor. It explained that it found "no error in the trial court's conclusion that: [t]he fence line was treated as the boundary between the coterminous lots for a sufficient length of time '. . . that neither ought to be allowed to deny the correctness of its location[.]'" (Quoting *Teton Peaks Inv. Co.*, 146 Idaho at 397, 195 P.3d at 1210). The district court found no error in the magistrate court's analysis of boundary by agreement or its application of a "presumption of acquiescence" based on the record. It noted that the declarations from the previous owners of Heath's property "do nothing to address or raise a genuine issue of material fact addressing the presumptions" that a longstanding fence (or in this case, driveway) were originally placed as a boundary by agreement because there was a dispute or uncertainty as to the true property line.

---

[2] The magistrate court granted Heath's motion for summary judgment with respect to Lish's counterclaims. Her counterclaims were dismissed as a result. Those claims are not the subject of this appeal.

## II.    ISSUES ON APPEAL

1. Did Heath waive his issues on appeal with respect to Denny's motion for summary judgment?

2. Did the district court err when it affirmed the magistrate court's rulings (or lack thereof) regarding the affidavits submitted by Respondents?

3. Did the district court err when it affirmed the magistrate court's ruling that Denny's was entitled to summary judgment under Idaho Code section 49-1806?

4. Did the district court err when it affirmed the magistrate court's ruling that Lish had standing to assert the doctrine of boundary by agreement?

5. Did the district court err when it affirmed the magistrate court's ruling that Lish had established boundary by agreement?

6. Did the district court err when it affirmed the magistrate court's ruling that Denny's was not liable for trespass and/or conversion?

7. Did the district court err when it affirmed the magistrate court's ruling that Denny's was entitled to an award of attorney fees and costs against Heath?

8. On cross-appeal, whether the district court erred in reducing Denny's award of attorney fees under Idaho Appellate Rule 35(b)(4)?

9. Are any of the parties entitled to an award of attorney fees on appeal?

## III.    STANDARDS OF REVIEW

"When this Court reviews the decision of a district court sitting in its capacity as an appellate court, we do not review the magistrate court's decision." *Sankey v. Ivey*, 172 Idaho 574, 581, 535 P.3d 198, 205 (2023) (citation omitted). This Court is "procedurally bound to affirm or reverse the decisions of the district court." *State v. Korn*, 148 Idaho 413, 415 n.1, 224 P.3d 480, 482 n. 1 (2009). When parties file cross-motions for summary judgment, that "does not in itself establish that there is no genuine issue of material fact." *Montgomery v. Montgomery*, 147 Idaho 1, 5, 205 P.3d 650, 654 (2009). It also "does not change the applicable standard of review, [as] this Court must evaluate each party's motion on its own merits." *Smith v. Kount, Inc.*, 169 Idaho 460, 463, 497 P.3d 534, 537 (2021) (citation omitted).

This Court applies the same standard as the trial court when reviewing an appeal from an order granting summary judgment. *Shea v. Kevic Corp.*, 156 Idaho 540, 544, 328 P.3d 520, 524 (2014). Summary judgment is proper if "the movant shows that there is no genuine dispute as to

10

any material fact and the movant is entitled to judgment as a matter of law." I.R.C.P. 56(a). To determine whether there is a genuine issue of material fact, the trial court "must liberally construe the facts, and draw all reasonable inferences in favor of the nonmoving party." *Fragnella v. Petrovich*, 153 Idaho 266, 271, 281 P.3d 103, 108 (2012).

The admissibility of affidavits filed in support of a motion for summary judgment is a threshold issue that must be decided before addressing the parties' substantive arguments on summary judgment. *Id.* The trial court's decision to admit affidavits in this context is reviewed for an abuse of discretion. This Court looks to whether the trial court: "(1) correctly perceived the issue as one of discretion; (2) acted within the outer boundaries of its discretion; (3) acted consistently with the legal standards applicable to the specific choices available to it; and (4) reached its decision by the exercise of reason." *Lunneborg v. My Fun Life*, 163 Idaho 856, 863, 421 P.3d 187, 194 (2018).

In this case, the trial court denied Lish's request for a jury trial. As a result, the trial court would have been the trier of fact had this case proceeded to a bench trial. When the trial court is acting as the trier of fact and is deciding a motion for summary judgment, it is "entitled to arrive at the most probable inferences based upon the undisputed evidence properly before it and grant the summary judgment despite the possibility of conflicting inferences." *Intermountain Forest Mgmt., Inc. v. La. Pac. Corp.*, 136 Idaho 233, 235, 31 P.3d 921, 923 (2001) (citation omitted).

A trial court's award of attorney fees is also reviewed for an abuse of discretion. *Idaho Mil. Hist. Soc'y, Inc. v. Maslen*, 156 Idaho 624, 629, 329 P.3d 1072, 1077 (2014).

## IV.    ANALYSIS

Heath raises several arguments on appeal that will be discussed in turn. His arguments on appeal include challenges to the district court's decision to affirm the magistrate court's decision to consider certain affidavits provided by Denny's and Lish in support of their motions for summary judgment; claiming that the district court erred in affirming the magistrate court's decision to consider the affirmative defense of boundary by agreement with respect to Lish's motion for summary judgment; and claiming that the district court erred in affirming the magistrate court's decision to grant Denny's motion for summary judgment on the basis that Denny's reasonably relied on information provided by Lish before it decided to tow his cars. We will also discuss Denny's cross-appeal of the district court's decision to reduce the amount of attorney fees awarded by the magistrate court.

11

**A. Heath has not waived his arguments related to the contested affidavits on appeal.**

The district court held that Heath waived his arguments with respect to certain affidavits filed by Denny's and Lish in support of their summary judgment motions because Heath did not raise the issue of admissibility in the issue section of his brief on intermediate appeal. However, the district court noted that Heath devoted several pages of his brief to "the claimed error in these evidentiary rulings of the trial court," and explained that Heath "continue[d] suggesting that the trial court 'erred in refusing to strike Defendants' affidavits[.]' " The district court, as a result, addressed the affidavits in passing.

Heath argues that he has preserved the issue of the admissibility of certain affidavits. We agree with Heath.

Idaho Appellate Rule 35 governs the content and arrangement of briefs on appeal. I.A.R. 35. Subsection (a)(4) explains how the parties are to frame their issues on appeal:

> Issues Presented on Appeal. A list of the issues presented on appeal, expressed in the terms and circumstances of the case but without unnecessary detail. The statement of the issues should be short and concise, and should not be repetitious. The issues shall fairly state the issues presented for review. The statement of issues presented will be deemed to include every subsidiary issue fairly comprised therein.

I.A.R. 35(a)(4). Subsection (6) explains how the parties are to frame their arguments on appeal:

> Argument. The argument shall contain the contentions of the appellant with respect to the issues presented on appeal, the reasons therefor, with citations to the authorities, statutes and parts of the transcript and record relied upon.

I.A.R. 35(a)(6). Generally, the "[f]ailure of the appellant to include an issue in the statement of issues required by I.A.R. 35(a)(4) will eliminate consideration of that issue on appeal." *Kugler v. Drown*, 119 Idaho 687, 691, 809 P.2d 1166, 1170 (Ct. App. 1991) (citation omitted). However, we held "this rule might be relaxed where the issue was addressed by authorities cited or arguments contained in the briefs." *Beebe v. N. Idaho Day Surgery, LLC*, 171 Idaho 779, 789, 526 P.3d 650, 660 (2023) (citation omitted).

In this case, Heath thoroughly argued that the magistrate court's decision concerning the admissibility of certain affidavits before the district court on intermediate appeal. He devoted several pages of his brief to challenging the magistrate court's decision to consider the affidavits, as was noted by the district court. This sufficiently raised the issue on intermediate appeal, and we hold that he has not waived his argument challenging the admissibility of certain affidavits.

**B. The district court erred in affirming the admission of the Hymas and Harker Affidavits but did not err in affirming the admission of the remaining affidavits.**

12

The district court addressed Heath's objections to the contested affidavits in passing, ruling that:

> The [c]ourt has reviewed the objections and the trial court's ruling related to the admissibility of the various affidavits. The contents and admissibility of affidavits are reviewed under an abuse of discretion standard. With respect to the five (5) affidavits referenced *supra*, the argument advanced on appeal appear[s] to be a recycling of arguments raised at the trial court level. Heath has advanced no colorable argument demonstrating how the trial court erred in its analysis or abused its discretion in admitting these affidavits. This [c]ourt, in considering the four (4) pronged test in determining whether the trial court properly exercised its discretion in admitting these affidavits, can find no abuse of the trial court's discretion in its evidentiary rulings relative to these five (5) affidavits. As a result, the [c]ourt AFFIRMS, [sic] the trial court's evidentiary rulings as outlined in its Order.

(Emphasis omitted).

Heath argues on appeal to this Court that the district court erred in affirming the admission of the contested affidavits under Idaho Rule of Evidence 803(6); Heath claims that the affidavits contained statements that lacked foundation, constituted inadmissible hearsay, and were conclusory. Heath's objections to the Lish Affidavit, the Fourth Lish Affidavit, and the Levi Affidavit are that the statements lack foundation because the parties' affidavits indicate they are based on "personal knowledge and belief," and are conclusory. Heath argues it is impossible to know which statements in the affidavits are based on personal knowledge and which are based on belief. Lish and Denny's argue that the contested affidavits satisfy the business records exception to the hearsay rule, have adequate foundation, and counter Heath's arguments related to the photographs with the argument that testimony from the photographer is not necessary for the photographs to be admitted. We will address Heath's objections to the contested affidavits in turn.

1. *The district court erred in affirming the admission of the Harker Affidavit because it was inadmissible under Idaho Rule of Evidence 803(8).*

The Harker Affidavit contains heavily redacted police reports that detailed Lish's previous attempts to have the Chubbuck Police Department order Heath to move his cars. Denny's introduced Officer Harker's Affidavit and attached police reports under Idaho Rule of Evidence 803(6)—the business records exception to the hearsay rule— and argues on appeal that the Harker Affidavit was also admissible under the present sense impression and recorded recollection exceptions to the hearsay rule. Heath argues on appeal that the Harker Affidavit was inadmissible because Officer Harker lacked personal knowledge of the underlying incidents described in the police reports, and he was not a custodian of records for the Chubbuck Police Department.

13

Idaho Rule of Evidence 803(8) is the public records exception to the hearsay rule. It addresses the admissibility of police reports. Rule 803(8)(A)(ii)(b) provides that "an investigative report by law enforcement personnel or a public office's factual finding resulting from a special investigation of a particular complaint, case, or incident," are not within the exception to the hearsay rule, "except when offered by an accused in a criminal case[.]" I.R.E. 803(8)(A)(ii)(b). In *Fragnella*, when a party attempted to introduce a police report under the "catch-all" exception to the hearsay rule, we held that "[i]f this Court were to allow a police report to be admitted in a civil case under [another hearsay exception], the decision would evade and nullify the purpose of Rule 803(8)(A), which specifically excludes such documents." *Fragnella v. Petrovich*, 153 Idaho 266, 275, 281 P.3d 103, 112 (2012).

We hold that the Harker Affidavit was inadmissible hearsay, not for the reasons stated by Heath, but because it is inadmissible under Idaho Rule of Evidence 803(8). The district court erred in affirming the admission of the Harker Affidavit and the affidavit should have been stricken. Although the district court erred when it affirmed the admission of the Harker Affidavit, the admission was akin to harmless error because it does not appear that the magistrate relied on the affidavit when reaching its decision.

2. *The district court also erred in affirming the admission of the Hymas Affidavit because it lacked foundation and did not satisfy the business records exception.*

The Hymas Affidavit includes statements from Hymas that she is the Chief Deputy for the Bannock County Assessor's Office, and that the Assessor's Office regularly generates cadastral maps. Ms. Hymas states the affidavit is based on personal knowledge, and it includes the legal description of the property that the map purports to show. The affidavit does not include a statement that Ms. Hymas is the custodian of records, nor does it include a statement regarding when or how the cadastral maps are generated. The Hymas Affidavit did not explain the relationship between Bannock County Geographic Information Systems and the Bannock County Assessor's Office, where Ms. Hymas works. It did not address whether the Assessor's Office is involved in producing the cadastral maps, or how the Assessor's Office uses the maps as part of the regularly conducted activities of the office. A cadastral map purporting to show the boundary between the Heath and Lish properties is attached to the affidavit. Heath argues that the Hymas Affidavit should have been stricken because the affidavit does not provide adequate foundation for the attached map, and it does not satisfy the business records' exception to the rule against hearsay.

The district court affirmed the admission of the Hymas Affidavit under the business records exception to the hearsay rule and adopted the magistrate court's reasoning with respect to its admission. The magistrate court reviewed the Hymas Affidavit, noting it was "given very little direction from this affidavit, and correspondingly, from this exhibit, as to what bearing it has on the property dispute involved in this case." The magistrate court noted the affidavit did not explain how the maps were generated, how they are used by the assessor's office, or what the relationship is between the Assessor's Office and the Geographic Information Systems Department that creates the maps. Although the magistrate court "concur[red], to some degree, that the foundation is somewhat lacking as to what these maps are used for, and what bearing they have on [the Assessor]'s analysis [,]" it ultimately considered the affidavit but noted it would give the affidavit little weight.

Idaho Rule of Evidence 803(6) governs the admission of business records. Under that rule, the proffered documents must be "made at or near the time" of the event by "someone with knowledge," and the record must be "kept in the course of a regularly conducted activity," where "making the record was a regular practice of that activity[.]" I.R.E. 803(6)(A)–(C). Further, the records themselves must either be self-authenticating under Idaho Rule of Evidence 902(11) or 902(12) *or* their authenticity must be established by the custodian of records or other qualified witness. I.R.E. 803(6)(D). The business records exception to the rule against hearsay requires that the foundation for the record, in this case the map, be established for the court—that the map was "made at or near the time by – or from information transmitted by – someone with knowledge[,]" and that all the other conditions of the exception "are shown by the testimony of the custodian of records or another qualified witness, or by a certification that complies with Rule 902(11) or (12)[.]" I.R.E. 803(6)(A), (D). We hold that the district court erred in affirming the admission of the Hymas Affidavit and the attached cadastral maps because the affidavit does not establish that Ms. Hymas has personal knowledge of how the map was created, or when it was created. As the magistrate court noted, the affidavit does not explain the relationship between Bannock County Geographic Information Systems, which produces the maps, and the Assessor's Office. Although the affidavit states that it is based on personal knowledge, it does not address how Ms. Hymas is qualified to testify to lay the foundation for the admission of the cadastral map. As a result, we hold that the Hymas Affidavit should have been stricken. Even so, since the magistrate court did

15

not find the affidavit persuasive, its admission is akin to harmless error because it does not appear to have affected the magistrate's decision.

3. *The district court did not err in affirming the admission of the remaining affidavits..*

The district court affirmed the admission of the Wilson Affidavit, the Levi Affidavit, the Lish Affidavit, and the Fourth Lish Affidavit, determining that the magistrate court did not abuse its discretion when it admitted the challenged affidavits, and largely adopting the magistrate court's reasoning with respect to the affidavits. Heath makes the same arguments on appeal as he did below regarding the admission of these affidavits. We will discuss each affidavit below.

a. *The Wilson Affidavit*

The Wilson Affidavit contains statements from Denny's custodian of records, with attached photographs and other documents related to the tow of Heath's cars. Heath objects to the Wilson Affidavit because he argues the photographs were not created by Denny's, and he maintains that the photographs are not business records created in the regular course of Denny's business. He contends that Wilson lacks personal knowledge of Denny's record keeping system and of how the photographs were generated.

The magistrate court held that the Wilson Affidavit, and the attached photographs, were not being offered by Denny's to establish that Heath's cars were on Lish's property but were being offered to show what information Denny's relied on when it decided to tow Heath's cars. We hold that the district court did not err in affirming the magistrate court's ruling. We disagree with Heath's argument that the Wilson Affidavit did not satisfy the business records exception and that the attached photographs were inadmissible hearsay. As Denny's argued, Ms. Wilson is the corporation's controller and its custodian of records. The photographs attached to the affidavit are not hearsay as they were not offered to prove the truth of the matter asserted—to show that Heath's cars were on Lish's property—but were offered to show what Denny's relied on in deciding to tow Heath's cars. Idaho Rule of Evidence 801(c) defines hearsay as "a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." I.R.E. 801(c). Because the photographs attached to the Wilson Affidavit were not offered to show that Heath's vehicles were on Lish's property but were offered to show what information Denny's relied on when it decided to conduct the tow, the photographs are not inadmissible hearsay.

b.  *The Levi Affidavit and Lish Affidavit*

The district court also adopted the magistrate court's reasoning regarding Heath's objections that the Lish Affidavit, Levi Affidavit, and Fourth Lish Affidavit lacked foundation because they were made on "personal knowledge and belief," and that those affidavits contained conclusory statements. The district court held it was not an abuse of discretion for the magistrate court to admit those affidavits because the magistrate court concluded the phrase "personal knowledge and belief" meant that the affiants "gained personal knowledge," and based upon this, the court found their interpretation to be true and accepted. The district court held that the magistrate court was correct to look to the dictionary definition of "belief" in interpreting the phrase "personal knowledge and belief." The district court also acknowledged that the magistrate court concluded that the Levi Affidavit and both Lish Affidavits were not "dispositive" of the property line dispute but were merely the affiants' opinions regarding the property line.

Heath raises the same objection on appeal. He argues that the phrasing "personal knowledge and belief" makes it impossible to tell which statements are based on the affiant's personal knowledge and which statements are based on belief. Heath's objections are not well taken. They are hyper-technical, and we are not persuaded that statements made on "personal knowledge and belief" equate to statements made on "information and belief." The Lish Affidavit contains statements such as, "I am familiar with the scene depicted in [the photograph] as it is a photograph of 5120 Dorian Street, Chubbuck, Bannock County, Idaho where I resided for seven years" and "[t]he photograph is an accurate depiction of the objects and the scene at the relevant time that precipitated this dispute." These statements are based on personal knowledge from Lish having lived at the property for several years. In the same vein, the Levi Affidavit contains statements that Levi "rented a cement cutter and cut back my driveway by about eight (8) inches" and that the photograph of the cut driveway and trench "is a fair and accurate depiction of the trench and its location." These statements also appear to be grounded in Levi's personal knowledge. We hold that the district court did not err in affirming the admission of the contested affidavits over Heath's objections.

c.  *The Fourth Lish Affidavit*

In addition to the "personal knowledge and belief" argument addressed above, Heath maintains that the magistrate court failed to address his objections to the Fourth Lish Affidavit and

17

as a result the granting of summary judgment in favor of Lish on his trespass and conversion claims was erroneous. Lish did not address this argument.

Heath cites *Montgomery v. Montgomery*, 147 Idaho 1, 7, 205 P.3d 650, 656 (2009), in support of his contention that the district court erred and was required to reverse summary judgment in Lish's favor with respect to his trespass and conversion claims because the magistrate court did not address the admissibility of the Fourth Lish Affidavit before it granted summary judgment. In *Montgomery*, we held that the magistrate court erred when it ruled on a summary judgment motion without deciding the admissibility of the supporting affidavits. *Id.* at 6, 205 P.3d at 655. One of the parties objected to evidence used by the opposing party in support of a summary judgment motion based on "hearsay, relevancy, non-responsive answers, and foundation." *Id.* at 5–6, 205 P.3d at 654–55. The magistrate court "expressed concern that it would take too much time for him to make preliminary rulings on the admissibility of each piece of evidence to which an objection had been made," and "acknowledge[d] that much of the evidence offered by the parties was inadmissible[.]" *Id.* at 6, 205 P.3d at 655. Instead, the magistrate court heard oral argument on the motion itself and informed the parties it would rule on objections as they arose during argument. *Id.* We held that the magistrate court "failed to do the work required of every trial judge confronted with objections to evidence offered in connection with a summary judgment motion," and remanded the case for appropriate findings. *Id.* at 6–7, 205 P.3d at 655–56.

This case is easily distinguished from *Montgomery*. In this case, the magistrate court did address the admissibility of the affidavits before reaching a decision on Lish's summary judgment motion. Although the magistrate court did not specifically reference the Fourth Lish Affidavit, the magistrate court thoroughly addressed the other affidavits. We agree with the district court that the magistrate court essentially <u>did</u> address Heath's objections to the Fourth Lish Affidavit because they were identical to Heath's objections to the Levi Affidavit, which the magistrate court overruled. The district court noted that:

Similar to the analysis conducted by the trial court relative to the Corrected Affidavit of Levi Lish, Heath's objections to paragraphs 6 through 10 of the Fourth Affidavit of Melissa Lish fall within the same rationale relied upon by the trial court in allowing similar statements concerning ownership by Levi Lish, and upon reviewing, in full, the trial court's Order, it is clear that Heath's objections to the Fourth Affidavit of Melissa Lish were overruled, although admittedly not expressly.

We hold that the district court did not err in rejecting Heath's argument that the magistrate court erred in failing to rule on his objection to the Fourth Lish Affidavit.

18

**C. The district court did not err when it affirmed the magistrate court's conclusions that Lish had standing to raise the affirmative defense of boundary by agreement and that the defense was timely raised.**

The district court affirmed the magistrate court's finding that Lish had standing to raise the affirmative defense of boundary by agreement because Lish raised the doctrine as a <u>defense</u> to Heath's trespass and conversion claims. It noted that "Heath fundamentally misunderstands the distinction between boundary by agreement as an affirmative defense and boundary by agreement being asserted as an independent action to quiet title to property." The district court acknowledged that Lish would not be able to, for example, raise a counterclaim for quiet title "unless she established that she was an owner," but noted Lish was <u>not</u> seeking quiet title, but was relying on the doctrine as a defense.

Heath argues on appeal that Lish lacked standing to raise the affirmative defense of boundary by agreement because she was not the owner of 5120 Dorian Street. Heath contends that "the doctrine [of boundary by agreement] is litigated by parties who have an ownership interest in the property at the time boundary by agreement is asserted." (Emphasis omitted). Lish maintains that the trial court correctly found that Lish had standing because she married Levi in 2017, took out a HELOC loan with Levi on the house, and used a portion of her income to make house payments and repairs while the couple lived in the home.

We hold that the district court did not err in affirming the trial court's determination that Lish had standing to raise boundary by agreement *as a defense* to Heath's trespass and conversion claims. We agree with the district court that "the fact that Lish was undisputedly a legal occupier and possessor of the property in question gives rise to standing." We also agree that Lish "had a right to occupy and enjoy the use of the property." The district court clearly recognized that Lish was not attempting to raise an independent claim of quiet title through boundary by agreement. Its conclusion that Lish had standing to raise that defense in response to Heath's trespass claim was not clearly erroneous.

Heath also argues on appeal that the district court erred when it affirmed the magistrate court's decision to allow Denny's and Lish to raise the defense of boundary by agreement at summary judgment. The district court held that the magistrate court did not err in considering the defense because it was raised by Denny's and Lish in advance of trial and Heath had an opportunity to respond in briefing and at oral argument. It relied on our decision in *Bluestone v. Mathewson*, 103 Idaho 453, 455, 649 P.2d 1209, 1211 (1982), in which we explained "where the defense was

19

raised before trial and the defendant was given time to present argument in opposition, the defense . . . can be raised for the first time in the summary judgment motion . . . .”

"The purpose of requiring affirmative defenses to be raised in a responsive pleading is to alert the parties to the issues of fact which will be tried and to afford them an opportunity to present evidence to meet those defenses." *Van Orden v. Van Orden*, 170 Idaho 597, 607, 515 P.3d 233, 243 (2022) (internal quotation marks and citation omitted). A party does not waive an affirmative defense for failing to raise it in an initial answer, so long as the defense is raised before trial and the opposing party has the opportunity to respond through briefing and oral argument. *Krinitt v. Idaho Dep't of Fish & Game*, 162 Idaho 425, 429, 398 P.3d 158, 162 (2017) (citations omitted). We have held that an affirmative defense can be raised for the first time on summary judgment. *See Callenders, Inc. v. Beckman*, 120 Idaho 169, 174, 814 P.2d 429, 434 (Ct. App. 1991) (citing *Bluestone*, 103 Idaho at 455, 649 P.2d at 1211; *cf. Bryan & Co. v. Kieckbusch*, 94 Idaho 116, 119, 482 P.2d 91, 94 (1971) (party waived an affirmative defense because it was raised for the first time in an affidavit filed in support of a motion in opposition to summary judgment).

Heath's argument that the trial court and district court erred by allowing Denny's and Lish to raise the defense of boundary by agreement is unavailing. Heath cites *Bryan & Co.*, a case where an affirmative defense was not raised in the pleadings but was raised in affidavits filed in opposition to a summary judgment motion. Although Heath relies on *Bryan & Co.*, he fails to acknowledge a more recent line of cases that has held that an affirmative defense may be raised at the summary judgment stage so long as it is raised before trial and the opposing party has an opportunity to respond. *See, e.g.*, *Bluestone*, 103 Idaho at 455, 649 P.2d at 1211 ("[E]ven though it would have been a better practice for the appellant to have raised the affirmative defense in the reply to the counterclaim or to have requested an amendment, we decline to follow the federal circuit courts cited. The defendant knew of the affirmative defense and was given time to present argument in opposition to the defense." (citation omitted)); *Fuhriman v. State*, *Dep't of Transp.*, 143 Idaho 800, 804, 153 P.3d 480, 484 (2007); *Krinitt*, 162 Idaho at 430, 398 P.3d at 162; *Cf. Edmondson v. Shearer Lumber Prods.*, 139 Idaho 172, 178–79, 75 P.3d 733, 739–40 (2003). The more recent line of cases follows *Bluestone* in liberally construing the Idaho Rules of Civil Procedure, including Rule 8(c), "to secure the just, speedy and inexpensive determination of every action and proceeding," Idaho Rule of Civil Procedure (1)(b), to allow an affirmative defense to be raised at the summary judgment stage even if a party fails to raise the defense in the initial

pleadings. *Bluestone*, 103 Idaho at 455, 649 P.2d at 1211. We hold that the district court did not err in affirming the magistrate court's decision to consider the affirmative defense of boundary by agreement because the defense was raised before trial and Heath was provided the opportunity to respond through briefing and at oral argument before the magistrate court.

### D. The district court erred when it affirmed the magistrate court's decision granting Lish's motion for summary judgment because there were genuine disputes of material fact.

The district court affirmed summary judgment for Lish with respect to Heath's trespass and conversion claims based on the doctrine of boundary by agreement. It held that the magistrate court did not err when it concluded that the fence line had been treated as the boundary between the two properties for a sufficient length of time for Lish to invoke the doctrine. The district court relied on our decision on *Teton Peaks*, where we explained:

> For nearly a century it has been the law of this state that evidence of a long established [sic] fence creates two presumptions. First, when a fence line has been erected, and then coterminous landowners have treated that fence line as fixing the boundary between their properties "for such a length of time that neither ought to be allowed to deny the correctness of its location" the law presumes an agreement fixing that fence line as the boundary…. Second, coupled with the long existence and recognition of a fence as a boundary, "the want of any evidence as to the manner or circumstances of its original location, the law presumes that it was originally located as a boundary by agreement because of uncertainty or dispute as to the true line."

*Teton Peaks Inv. Co. v. Ohme*, 146 Idaho 394, 397, 195 P.3d 1207, 1210 (2008) (quoting *Luce v. Marble*, 142 Idaho 264, 271–72, 127 P.3d 167, 174–75 (2005)). The district court held that the declarations from the previous owners of Heath's property did establish that "there was not an express or verbal agreement to establish a boundary," but that they did not "address or raise a genuine issue of material fact addressed by [this Court] in *Teton Peaks*." It noted that "the trial court not only concluded that the declarations of [Jensen and Scott] did nothing to negate the two (2) presumptions articulated in *Teton Peaks*, it also concluded that the conduct of Heath, in fact, supported its application of the presumptions and demonstrated Heath's acquiescence." It agreed with the magistrate court that Heath acquiesced to the original driveway being the property line based on Heath's failure to object to Levi's removing eight inches from the driveway and by agreeing to Lish's request to increase the fence height.

Heath argues that the doctrine of boundary by agreement does not apply in this case because the boundary was not uncertain or in dispute and there was no agreement between the prior owners to set the fence line and the original driveway as the property line. Heath contends

21

that the parties did not know that the property line was different until he obtained a survey, and as a result, there was no uncertainty or dispute as to the boundary. Heath also posits that Lish destroyed the alleged boundary when eight inches were removed from the driveway. Lish contends that the doctrine of boundary by agreement applies, the survey is irrelevant because the fence has been in place for over twenty-three years, that Heath is urging this Court to adopt an interpretation of the doctrine that is too literal, and that neither an actual dispute nor spoken agreement are necessary for a court to find a boundary by agreement.

The application of the doctrine of boundary by agreement raises "a mixed question of law and fact." *Dreher v. Powell*, 120 Idaho 715, 717, 819 P.2d 569, 571 (Ct. App. 1991). For the doctrine to apply, a party must show both "an uncertain or disputed boundary and a subsequent agreement fixing the boundary." *Griffel v. Reynolds*, 136 Idaho 397, 400, 34 P.3d 1080, 1083 (2001). "Under this doctrine, these two requirements are set out in a specific order; namely, there must be an uncertain or disputed boundary first, and *then* a subsequent agreement fixing the boundary." *Reid v. Duzet*, 140 Idaho 389, 391–92, 94 P.3d 694, 696–97 (2004) (emphasis added). "Ignorance of what is later deemed to be the true boundary suffices to show uncertainty." *Luce*, 142 Idaho at 271,127 P.3d at 174 (citation omitted). If "the true boundary is unknown until the property is surveyed, it is sufficient for a trier of fact to find an uncertain or disputed boundary." *Fickenwirth v. Lanning*, 173 Idaho 1, ___, 538 P.3d 370, 377 (2023).

"[A]n agreement, either express or implied, 'is essential to a claim of boundary by acquiescence.'" *Huskinson v. Nelson*, 152 Idaho 547, 551, 272 P.3d 519, 523 (2012) (citations omitted). When "there is no express agreement. . . the court must infer that there was an agreement between the parties based on their behavior." *Id.* at 550, 272 P.3d at 522. "A long period of acquiescence by one party to another party's use of the disputed property provides a factual basis from which an agreement can be inferred." *Griffel*, 136 Idaho at 400, 34 P.3d at 1083. However, "the trial court is not required to draw that inference." *Downey v. Valvold*, 144 Idaho 592, 596, 166 P.3d 382, 386 (2007). A period of acquiescence of at least five years is required to establish boundary by agreement. *Fickenwirth*, 173 Idaho at ___, 538 P.3d at 378 (citation omitted). "If a boundary by agreement is established, 'the parties to the agreement are no longer entitled to the amount of property provided for in their deeds and must absorb the effect of any increase or decrease in the amount of their property as a result of the new boundary.'" *Anderson v. Rex Hayes*

*Fam. Tr.*, 145 Idaho 741, 744, 185 P.3d 253, 256 (2008) (quoting *Stafford v. Weaver*, 136 Idaho 223, 225, 31 P.3d 245, 247 (2001)).

The district court relied on *Teton Peaks* and the presumptions created by a longstanding fence to affirm the magistrate court's determination that Lish had established boundary by agreement. *Teton Peaks* dealt with a quiet title action between neighbors, and it involved a fence that had been standing for at least sixty years. *Teton Peaks Inv. Co.*, 146 Idaho at 397, 195 P.3d at 1210. There was no evidence in the record in *Teton Peaks* relating to who built the fence, or why it was built. *Id.* at 396, 195 P.3d at 1209. The record did establish that "[e]ach owner from 1940 until 2004 treated the fence as the property line." *Id.* (footnote omitted). The *Teton Peaks* Court explained that, even if there were evidence that a previous owner had been alerted to an uncertainty in the boundary in 1996, that did not negate earlier use of the fence as the property line or any earlier uncertainty, and that "[a]ny boundary by agreement was established long before 1996 and is subsequently binding on Teton Peaks." *Id.* at 397, 195 P.3d at 1210. The *Teton Peaks* Court also noted that the presumption that the fence was built to resolve an uncertain boundary applied because the record did not show evidence that the fence was built for another purpose. *Id.* at 398, 195 P.3d at 1211.

In this case, the Heath and Lish properties are separated by a fence and a driveway. The fence runs along the side of the Heath property and divides the backyards of the properties. The driveway extends forward past the fence up to the street. Heath provided declarations from Jensen and Scott, who each owned Heath's property at various times before Heath, that stated they did not have an agreement with the previous owner of 5120 Dorian Street establishing that the fence line and the original driveway constituted the property line. Both Jensen and Scott maintained in their declarations that there was no dispute as to the property line because they both assumed the property line was what was contained in their deeds. Lish provided an affidavit from Bloxham, the previous owner of 5120 Dorian Street, stating that the previous owners of Heath's property agreed that the fence line and the original driveway were the boundary between the two properties. The Bloxham Affidavit also stated that the driveway was in place before she moved onto the property and that it had been in place for approximately twenty-six years. Bloxham contended that she built the fence between the two properties, that at the time it was built the previous owners of Heath's property agreed to the fence location, and that the fence had been in place for approximately twenty-three years. The affidavit also stated that Heath was aware of the location of the fence when

23

he moved in next door in 2006, and that he acquiesced to Levi's decision to replace the original fence with a higher fence. Bloxham alleged that Heath was aware of the location of the new fence and acquiesced to it. The Bloxham Affidavit acknowledged that Levi had removed eight inches of the driveway on the Lish property but maintained the original driveway was always the agreed upon boundary.

Heath also maintains that the original driveway (and alleged boundary) was destroyed when Levi tore up part of the cement patio to install a power line and, in the process, removed eight inches from the driveway. We have held that "[t]he presumption of a boundary by agreement from the long recognition of the fence as a boundary line only applies where the fence is located." *Cecil v. Gagnebin*, 146 Idaho 714, 717, 202 P.3d 1, 4 (2009). The *Cecil* case dealt with a quiet title action and an appeal from a lower court decision that extended a boundary line, based on a longstanding fence, into a part of the property where there was no fence. *Id.* at 715, 202 P.3d at 2. We held that it was error for the lower court to extend the boundary by agreement beyond the actual fence. *Id.* at 717, 202 P.3d at 5. We explained that the presumption regarding a fence line "does not apply to the other half of the parties' common boundary"—where there is no fence. *Id.* at 717, 202 P.3d at 4. "That claimed boundary by agreement would be separate from the presumed boundary by agreement based upon the location of the fence," and "[i]t would be a boundary by agreement allegedly entered into by [the current property owners], not by their predecessors in interest." *Id.*

In this case, there are unresolved factual questions related to the location of the driveway; and whether there was an agreement and/or acquiescence either on the part of the previous owners of Heath's property or Heath himself. Because Levi removed eight inches from the driveway when he tore up part of the cement patio to install a powerline, that part of the original driveway no longer exists. The fence currently does not extend to the end of the driveway, and the driveway itself is not an extension of the fence line. To the extent that Lish and the lower courts relied on the fence line and the original driveway to establish the boundary between the two properties, without evidence of a separate dispute and subsequent agreement between Lish and Heath, that reliance was in error. Heath's continued reliance on the survey, his contention that his cars were parked on his property, and the fact that he parked his cars right up against the altered driveway suggest that he may have not acquiesced to the original driveway being the property line. Heath's failure to object to the removal of eight inches from the driveway on *the Lish side* of the property

24

does not necessarily indicate acquiescence to the original driveway being the property line. The Bloxham Affidavit does not indicate how long Heath acquiesced to the driveway being the property line or if there was a period of acquiescence of at least five years which is required to establish boundary by agreement. As a result, we hold that the district court erred in affirming the magistrate court's decision to grant Lish's motion for summary judgment based on boundary by agreement because there remain genuine issues of material fact regarding whether the doctrine applies in this case.

### E. The district court did not err when it affirmed summary judgment in favor of Denny's.

The district court held that, after "having reviewed the relevant statutes, case law and the trial court's Order," the trial court did not err when it granted Denny's motion for summary judgment. The district court agreed with the trial court that Denny's had "no duty. . . to look past the representations of a patron," and concluded that "a contrary result 'would be bad' policy thereby requiring tow companies to conduct title searches, seek out and obtain maps, cadastral maps, and even go to the extent of commissioning a survey before proceeding to tow a vehicle under I.C. § 49-1806(1)." It affirmed the grant of Denny's summary judgment and determined that "Denny's conduct did not rise to the level of 'an act of dominion wrongfully asserted over another's property.'" (Emphasis omitted) (citation omitted). The district court affirmed the grant of Denny's summary judgment on Heath's trespass claim finding that Denny's had the right to rely on Lish's claims regarding the property line and on Idaho Code section 49-1806(1) to perform the tow.

Heath argues on appeal that the district court erred because it "merely restated the magistrate's reasoning and simply agreed with the erroneous ruling" and did not address Heath's arguments related to Idaho Code section 49-1806(1). Heath maintains *Peasley Transfer & Storage Co. v. Smith*, 132 Idaho 732, 979 P.2d 605 (1998), is not applicable to this case, and the plain language of Idaho Code section 49-1806(1) "offers no immunity to towing companies." Heath also contends that because his cars were parked "extremely close" to the Lish driveway, but not *on* it, that his cars were not "standing upon" Lish's property. Denny's argues on appeal that the district court did not err in affirming the grant of Denny's summary judgment motion because it counters that its actions were legal under Idaho Code section 49-1806(1) and it reasonably relied on Lish's representations that Heath's cars were on her property.

Conversion is defined as "any distinct act of dominion wrongfully exerted over another's

personal property in denial or inconsistent with his rights therein, such as a tortious taking of another's chattels, or any wrongful exercise or assumption of authority, . . . over another's goods, depriving him of the possession, permanently or for an indefinite time." *Klam v. Koppel*, 63 Idaho 171, 179–80, 118 P.2d 729, 732–33 (1941) (quoting *Schlieff v. Bistline*, 52 Idaho 353, 357, 15 P.2d 726, 728 (1932)). "Conversion, being a wrongful and tortious act, cannot originate in the exercise of a legal right." *Peasley Transfer*, 132 Idaho at 743, 979 P.2d at 616 (citations omitted). The plaintiff must establish three elements to prevail on a conversion claim: "(1) that the charged party wrongfully gained dominion of property; (2) that property is owned or possessed by plaintiff at the time of possession; and (3) [that] the property in question is personal property." *Taylor v. McNichols*, 149 Idaho 826, 846, 243 P.3d 642, 662 (2010).

Civil trespass with damages is committed when a person "enters or remains on the real property of another without permission, knowing or with reason to know that his presence is not permitted, and causes damage to real or personal property in excess of one thousand dollars ($1,000)." I.C. § 6-202(2)(b). One of the ways a person can know that his presence is not permitted is when "[t]he property is reasonably associated with a residence or place of business[.]" I.C. § 6-202(2)(b)(i). However, Idaho's trespass statute lists exceptions for individuals with "a legally prescribed right to enter or remain upon the real property in question," Idaho Code section 6-202(7)(c), and/or a "licensed professional otherwise authorized to enter or remain on the real property during the course and scope of fulfilling his lawful duties[.]" I.C. § 6-202(7)(b)(iii).

Idaho Code section 49-1806(1) states:

> Any person having possession or control of real property who finds an unauthorized vehicle standing upon his property is permitted to have the vehicle removed or booted if there is posted on or near the property in a clearly conspicuous location, in large print, a sign or notice that unauthorized vehicles will be removed or booted at the owner's expense and designating the name of the towing firm. Unauthorized vehicles need not meet the provision of section 49-102(2), Idaho Code, in this instance.

I.C. § 49-1806(1).

The district court adopted the magistrate court's interpretation of Denny's role in this case as akin to the sheriff in *Peasley Transfer*, 132 Idaho at 738–39, 979 P.2d at 611–12. *Peasley Transfer* is a complex case that dealt with a warehouseman's lien, the sheriff's role in serving a writ of execution, and crossclaims of conversion. *Id.* at 736–37, 979 P.2d at 608–09. The writ ordered the removal of certain property based on a judicial lien obtained following divorce proceedings. *Id.* After the writ was executed, the mother of one of the parties claimed an interest

in some of the property, which led her to file a crossclaim against her former daughter-in-law for conversion. *Id*. We explained "it is well-established that a sheriff has an affirmative legal duty to execute a facially valid writ of execution and is not required to go behind the writ to verify its validity." *Id.* at 738, 979 P.2d at 611. We noted that a writ of attachment "is not wrongful unless an officer 'knows when he attaches personal property that it does not belong to the defendant.'" *Id.* at 739, 979 P.2d at 612 (quoting *Oakes v. Am. Sur. Co. of N.Y.*, 58 Idaho 482, 490, 76 P.2d 932, 936 (1938)). We also noted that the officer is authorized to execute a writ of attachment and to seize property "if he has no reason to suppose it to be" another person's property. *Id.* The sheriff in *Peasley Transfer* "possessed a facially valid writ of execution with directions to levy on specifically listed property," and the mother's "interest in the personal property was grounded upon an unrecorded, unnotarized bill of sale" from her son. *Id.* at 736, 739, 979 P.2d at 608, 612. We held, "[u]nder these circumstances, the sheriff acted consistent with his legal obligations in seizing the property pursuant to the writ." *Id.* at 739, 979 P.2d at 612.

Heath argues that *Peasley Transfer* is inapplicable in this case, in part because the sheriff had been dismissed from the lawsuit at the point *Peasley Transfer* was decided. However, we note there is a dearth of Idaho caselaw interpreting Idaho Code section 49-1806(1), and we agree with the district court that the reasoning behind the *Peasley Transfer* court's analysis of the sheriff's role and duties is analogous to those of Denny's here.

We hold that the district court did not err in affirming the magistrate court's determination that Denny's was not required to look beyond the information provided by Lish before deciding to conduct the tow. Lish provided cadastral maps and photographs to Denny's as part of the documents to support her position. Denny's notified Lish of the statutory requirements for signage and even provided Lish with a sign. When Denny's returned to remove Heath's cars it noted that the sign warning that unauthorized vehicles would be towed was properly posted. The Wilson Affidavit shows that Denny's complied with Idaho's towing statutes by contacting Heath and notifying him that his cars had been towed. Given the location of Heath's cars, Denny's reasonably relied on Lish's representations, and its conduct was lawful under Idaho's towing statute. Summary judgment was appropriate with respect to Heath's conversion claim because Heath would not be able to establish that Denny's wrongfully gained dominion over his cars.

With respect to Heath's trespass with damages claim, to the extent that Denny's entered Heath's property to perform the tow, it was there in a professional capacity providing a service to

Lish and was lawfully on Heath's property within the scope of its professional duties. As a result, Denny's actions fall within an exception to civil trespass with damages and Heath's trespass with damages claim fails as a matter of law. Further, as noted by the lower courts, Heath did not establish physical damage to his real property or personal property in the amount of one thousand dollars, which is a necessary element of civil trespass with damages. Thus, the district court did not err when it affirmed the grant of Denny's summary judgment motion with respect to Heath's conversion and trespass claims.

### F. The district court erred when it reduced Denny's attorney fee award.

Denny's cross-appeals on the limited issue of whether the district court erred when it reduced the amount of attorney fees by the cost of automated legal research—$123.87. The district court reduced the overall amount of attorney fees because it concluded that the magistrate court did not actually consider the cost of automated legal research in reaching its decision. It explained that "[i]t appears to this [c]ourt that the trial court inadvertently skipped the sub-part addressing automated legal research, mistakenly addressing sub-part (L) 'any other factor which the court deems appropriate' as subpart (K) and failed to individually address and/or consider sub-part (K)." The district court noted it did not have the benefit of a transcript for the hearing on Denny's motion for attorney fees, and as a result, it did not know the extent of discussion on the record regarding the Idaho Rule of Civil Procedure 54(e)(3) factors before the magistrate court wrote its decision. The district court explained that it was "clear to this [c]ourt . . . that the trial court did expressly consider each of the 54(e)(3) factors, with the exception of sub-part (K), and did express a basis for its ruling on each of these 54(e)(3) factors and finally opined that it had 'adequate information to analyze'" each factor.

Denny's argues that the district court erred because it did not show that the magistrate court abused its discretion in failing to expressly address sub-part (K) when it awarded $22,796.37 in attorney fees. Heath contends Denny's argument is a "red herring" and that the district court's reduction in the amount of attorney fees should be upheld because he maintains Denny's is arguing that the magistrate court did not need to *consider* all the 54(e)(3) factors as part of its decision. Heath's argument is unavailing. Generally, when the trial court determines whether to award attorney fees it must consider the factors outlined in Idaho Rule of Civil Procedure 54(e)(3) but "it is not necessary for the court to address all of the I.R.C.P. 54(e)(3) factors in writing[.]" *Johannsen v. Utterbeck*, 146 Idaho 423, 432–33, 196 P.3d 341, 350–51 (2008). "[T]he record must clearly

28

indicate the court considered all of the factors." *Id.* (citation omitted). "However, the bottom line in an award of attorney's fees is reasonableness." *Id*. at 433, 196 P.3d at 351.

In the order on attorney fees, the magistrate court acknowledged it was required to consider the Rule 54(e)(3) factors as part of its decision as well its need for sufficient information related to those factors. The magistrate court indicated it was "going to make it easy for an appellate court to decipher" what it considered in awarding the attorney fees to Denny's. When considering the Rule 54(e)(3) factors, the magistrate court could consider its own knowledge and experience, the record, and information from the attorney seeking the award. It is clear from the magistrate court's order that it considered the Rule 54(e)(3) factors in reaching its decision. The magistrate court was not required to reduce to writing its consideration of the Rule 54(e)(3) factors as part of its decision. Further, the record shows that Denny's counsel had provided the magistrate court with "a detailed analysis of the time and labor required to defend this case," including time entries for automated legal research. As a result, we hold that the district court erred when it reduced the amount of attorney fees awarded to Denny's.

**G. None of the parties are entitled to attorney fees on appeal.**

All parties sought attorney fees on appeal. Denny's sought attorney fees on appeal under Idaho Code sections 6-202(3)(c), 12-121, and 12-123. Lish sought attorney fees on appeal under Idaho Code sections 6-202(3)(c), 12-121, and 12-123, and Idaho Appellate Rules 40 and 41. Heath sought an award of attorney fees on appeal under Idaho Appellate Rules 40 and 41, Idaho Rule of Civil Procedure 54(d), and Idaho Code sections 6-202(3)(b)(i) and (b)(iii), and 12-121.

Denny's is the prevailing party on appeal. Idaho Code section 6-202(3)(c) allows this Court to award reasonable attorney fees "[i]f an action for civil trespass or civil trespass with damage is brought without foundation and the defendant prevails." I.C. § 6-202(3)(c). In this instance, we decline to award attorney fees to Denny's under this section on appeal as we note that Denny's defense to Heath's claims presented an issue of first impression, and "[w]here issues of first impression are raised, attorney fees will not be awarded." *Saint Alphonsus Reg'l Med. Ctr. v. Ada County*, 146 Idaho 862, 863, 204 P.3d 502, 503 (2009).

Denny's also sought attorney fees under Idaho Code sections 12-121 and 12-123. We note that Idaho Code section 12-123(2)(d) does not contemplate attorney fees on appeal. *Spencer v. Jameson*, 147 Idaho 497, 507, 211 P.3d 106, 116 (2009) ("[A]ttorney fees are not awardable under I.C. § 12-123 for the appellate process."); *see also Papin v. Papin*, 166 Idaho 9, 43, 454 P.3d 1092,

1126 (2019). Idaho Code section 12-121 allows for an award of attorney fees on appeal to the prevailing party when the appeal, or part of the appeal, is brought or pursued "frivolously, unreasonably or without foundation." I.C. § 12-121. However, we determine that Heath did not pursue his appeal frivolously, unreasonably, or without foundation. Denny's defense raised an issue of first impression with respect to Idaho Code section 49-1806(1) and Heath's appeal was not frivolous with respect to the defense of boundary by agreement. In an exercise of discretion, we determine that an award of attorney fees on appeal under Idaho Code section 12-121 is not warranted in this case.

Lish did not prevail on appeal, and she is not entitled to an award of attorney fees. Heath prevailed in part on appeal with respect to our decision to reverse the grant of Lish's motion for summary judgment. However, Heath did not prevail on his appeal of the grant of Denny's summary judgment motion and so he is not a prevailing party for the purposes of an award of attorney fees on appeal.

## V. CONCLUSION

For the above-stated reasons, we affirm the district court's decision with respect to Denny's summary judgment motion, and we reverse the district court's decision to reduce Denny's attorney fee award. We vacate the grant of summary judgment to Lish on Heath's trespass and conversion claims and remand this case to the district court with instructions to remand to the magistrate court for further proceedings.

Chief Justice BEVAN, Justices BRODY and MOELLER CONCUR.

Justice ZAHN CONCURS in the RESULT.